### Myron ZANVILLE and Robert Zanville, Appellants,

### v.

### Carlos R. GARZA, Appellee.

### No. 86–986.

District of Columbia Court of Appeals.

Submitted May 4, 1988.
Decided July 20, 1989.

Jeffrey Nadel was on the brief for appellants.

Carlos R. Garza, pro se. Charles Cervantes, entered an appearance for appellee.

Before MACK and FERREN, Associate Judges, and REILLY, Senior Judge.

PER CURIAM:

Appellee prevailed in the trial court on his civil action seeking recovery against

appellants for default on an unpaid promissory note (Count I) and for fraud and misrepresentation in negotiating the note (Count II). Before us on appeal, appellants frame only the narrow issue as to "Whether the trial court erred in awarding punitive damages on Count II when [it] failed to award compensatory damages." In the context of the factual circumstances of this case, we find that the query requires an affirmative answer. *See Pyne v. Jamaica Nutrition Holdings Limited*, 497 A.2d 118, 133 (D.C.1985). We reverse only that part of the judgment which awarded punitive damages.[1]

## I

On September 16, 1981, Carlos R. Garza, appellee, lent appellants, Myron and Robert Zanville, $10,000. Appellants signed a promissory note in which they "promis[ed] to pay to the order of [appellee], the loan amount stated, on the terms and at the interest (22% per annum) stated until the full amount has been paid." When appellants failed to pay the note, appellee filed an action in the Superior Court in which he sought judgment in contract on the unpaid promissory note (Count I). In a second count of his complaint, appellee sought judgment in tort for fraud and misrepresentation alleging that appellants misrepresented to him that they would pay the note when they never intended to do so.[2] After an *ex parte* hearing, at which appellants and their counsel failed to appear (notwithstanding notice)[3] the trial court entered judgment for appellee in the amount of $154,816.20 allocated as follows: as to Count I, the sum of $31,204.05; with respect to Count II, for fraud and misrepresentation (compensatory damages were included in this award) the amount of $31,-204.05; the court also awarded punitive damages as to the entire claim in the

amount of $62,408.10, and $30,000 in attorneys' fees "for wanton, oppressive and bad faith litigation." Appellants, retaining new counsel, and contending that damages awarded were grossly excessive, filed a motion to reconsider and vacate the judgment.

The trial court granted appellants' motion for reconsideration. In an amended judgment, the court granted relief in part and denied relief in part. Again on Count I, the trial court entered a judgment for appellee in the amount of $31,204.05. However, the court, recognizing that Count II requested alternative relief sounding in the nature of a tort, as well as the fact that compensatory damages had already been awarded under the contract count, set aside compensatory damages on Count II. It also reduced the award on Count II to $25,000 (covering punitive damages in the amount of $15,000 and attorneys' fees in the amount of $10,000). In this court, appellants challenged this order as to punitive damages and attorneys' fees. Although we summarily affirmed as to the attorneys' fees issue, (*see* note 1, *supra*) we now reverse as to the punitive damages.

## II.

Appellants, isolating Count II of the amended judgment of the trial court, argue that the court erred in awarding punitive damages when it failed to award compensatory damages. We conclude, as we did in *Pyne v. Jamaica Nutrition Holdings Limited, supra*, 497 A.2d at 133, that "because a verdict assessing punitive damages can be returned only when there is also a verdict assessing compensatory or actual damages, *Bay General Industries, Inc. v. Johnson*, 418 A.2d 1050, 1058 n. 21 (D.C. 1980); *Franklin Investment Co. v. Smith*, 383 A.2d 355, 358 (D.C.1978), we [must]

---

1. We previously summarily affirmed the award of attorneys' fees to appellee under the authority of *Synanon Foundation, Inc. v. Bernstein*, 517 A.2d 28 (D.C.1986).

2. Appellee requested relief on this count as an alternative to relief requested in Count I.

3. Prior to this hearing, two default judgments (one on each count of the complaint) were entered against appellants "arising out of the repeated failures of [appellants] and/or their counsel to appear for court proceedings." Appellants paid sanctions, under protest, including those levied by other judges, and sustained by the instant trial judge, for these repeated failures to appear.

reverse the verdict[ ] assessing punitive damages." *Accord Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 66 n. 8, 86 S.Ct. 657, 665 n. 8, 15 L.Ed.2d 582 (1966).

█ Our holding in this regard is not merely one of form over substance. We cannot look to the compensatory damages of Count I to sustain the punitive award. The trial court, in originally awarding punitive damages in the amount of $62,408.10, and an additional $30,000 in attorneys' fees, concluded that "appellants' persistent failure to acknowledge their debt, *their surreptitious removal of the collateral originally given in security of the note,* and their long history of vexatious, bad faith litigation in this case" (emphasis added) were properly considered. In its amended judgment, the court, in retaining compensatory damages only under the first count, acknowledged that the awards in the second count were excessive. In reducing the amount of punitive damages, the court nevertheless justified its decision to sustain the award by noting that the appellee had waited nearly four years, because of the dilatory tactics of appellants and their counsel, to obtain the judgment to which he was entitled. (The court saw fit to note, however, that the record revealed that counsel for appellee had overlitigated the case and was unnecessarily provocative.) In reducing the amount of attorneys' fees, the court voiced skepticism as to whether counsel for appellee, in reporting his expenses, had used his time wisely or well.

█ There is no question that sanctions and attorneys' fees are appropriately imposed for improper trial tactics and bad faith litigation, *see Synanon Foundation, Inc. v. Bernstein, supra* note 1, 517 A.2d at 30. However, punitive damages are appropriately reserved only for tortious acts which are replete with malice. *See Queen v. Postell,* 513 A.2d 812, 816 (D.C.1986) ("[T]he punitive damages award ... was incorrect because the tortious act was not 'aggravated by evil motive, actual malice, deliberate violence or oppression.' ... The tortious acts must be 'willful and outrageous conduct,' ... or it must result in gross fraud ...") (citations omitted); *Spar v. Obwoya,* 369 A.2d 173 (D.C.1977); *Price v. Griffin,* 359 A.2d 582, 589 (D.C.1976). On this record, although we condemn the dilatory tactics of the appellants, and can appreciate the frustration and concern the trial court faced with the prolonged "vituperative" nature of the litigation, we cannot say that the record supports the conclusion that appellants' conduct evidenced evil motive or malice.[4] *See* 22 Am.Jur.2d *Damages* §§ 766–70 at 822–25 (1988). The verdict in Count II is reversed, and the trial court's judgment, in all other respects, is affirmed.[5]

*Affirmed in part and reversed in part.*

4. The trial court, relying in its amended judgment on the dilatory tactics of appellants, implicitly recognized that the earlier allegation that appellants had surreptitiously removed the collateral (*i.e.,* a diamond ring valued at $15,000) was questionable. The record shows that appellee conceded (in a motion to enter default judgment against appellants) that "during the summer of 1981 ... he agreed to release the security from his custody solely [for] the purpose of allowing [appellant] to sell it and make payment on the note." This was a single promissory note with Myron Zanville as obligor. When this note was not paid, appellee executed a joint promissory note (which was effective December 3, 1981) with a co-maker as surety (Robert Zanville) as a substitute for the previously released collateral.

5. In reviewing the voluminous pleadings in this case, we note that at one stage of these proceedings the defense of usury was raised by appellants in a belated amended answer. It does appear that the interest rate charged by the money lender (appellee Garza) of 22 percent per annum substantially exceeded the 15 percent legal limit then set by statute when the note was executed on December 3, 1982, D.C.Code § 28–3301(a) (1981). It was not until the effective date of D.C.Law 5–62, March 14, 1984, which amended this section of the code by substituting "24" for "15," that it became legal to negotiate a note bearing such a high rate of interest. D.C.Code § 28–3301 (1988 Supp.).

Plaintiff-appellee's response was that the loan was made "for the purpose of acquiring or carrying on a business or commercial activity" and thus excepted from the 15 percent cap on interest by § 28–3301(d)(2). This issue was never resolved by the trial court, for the first defense counsel disappeared from the scene, thus

allowing a default judgment to be entered without opposition.

However, because the matter of usury was not raised on appeal, it is not within our province to

pass upon the issue. *See Beatty v. Franklin Investment Co.,* 179 A.2d 913, 915 (D.C.1962).