David D. DALO
and
D–Developers, Inc., Appellants,

v.

Murray A. KIVITZ, et al., Appellees.

No. 90–712.

District of Columbia Court of Appeals.

Argued May 16, 1991.
Decided Aug. 7, 1991.

Mitchell F. Dolin, with whom John Vanderstar and Laura M. Steeves were on the brief, for appellants.

Geoffrey T. Hervey, with whom David P. Durbin and Carol Ann Petren were on the brief, for appellees.

Before FERREN, TERRY and FARRELL, Associate Judges.

FARRELL, Associate Judge:

■ This appeal arises from a judgment for legal malpractice in favor of appellant David D. Dalo against his attorneys, appellees Kivitz and Liptz. Dalo challenges the refusal of the trial court, as trier of fact, to award him attorney's fees as damages, punitive damages, and certain compensatory damages.[1] Only the third claim has merit, necessitating a partial remand for further proceedings.

I.

During the summer of 1988 Dalo, a real estate developer, negotiated a real estate contract to purchase property in the District of Columbia known as "Greystone" for $3,765,000. Pursuant to an assignment agreement, Dalo assigned his right to buy Greystone to J. Eugene Wills, also a real estate developer. Under the terms of the assignment agreement, if Wills purchased Greystone, he owed Dalo $435,000; if Wills through no fault of Dalo's failed to purchase Greystone, he owed Dalo $87,000, that sum to be held in escrow. The closing on the transaction was scheduled for October 4, 1988.

Meanwhile Dalo's attorneys, law partners Kivitz and Liptz,[2] arranged a joint venture among themselves, Dalo, and another client, banker Charles J. D'Arco. The purpose of the venture was to split the $435,000 Dalo expected to earn from the Greystone transaction. When entering this business venture with the clients, Kivitz and Liptz failed to advise either client about the potential conflicts of interest that existed among the parties to the joint venture agreement.

On October 3, 1988, Kivitz, Liptz and D'Arco learned that Dalo intended to renege on his promise to split the money. On October 4, therefore, Kivitz, Liptz and D'Arco sued Dalo, the title company for the Greystone deal, and the stakeholders of the money held in escrow. They requested a declaratory judgment of the validity of the joint venture agreement and claimed their shares of Dalo's proceeds from the Grey-

---

1. Dalo also challenges an evidentiary ruling made at trial. He contends that the judge should have excluded from evidence a handwritten agreement offered by Kivitz and Liptz to impeach Dalo's testimony, arguing that Kivitz and Liptz violated discovery rules by failing to produce the document earlier in the proceedings. A trial judge, however, has "wide latitude" in overseeing discovery and the trial process, *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1262 (D.C.1979); decisions regarding the scope and the conduct of discovery will be reversed only upon a showing of abuse of discretion. *Mampe v. Ayerst Laboratories*, 548 A.2d 798, 805 n. 15 (D.C.1988). Even if Kivitz and Liptz should

have disclosed the handwritten agreement to Dalo before the trial began, an issue we do not decide, "[w]hether to impose sanctions [for violation of the discovery rules], and if so the nature of such sanctions, are matters committed to the trial court's discretion." *Nolan v. Nolan*, 568 A.2d 479, 487 (D.C.1990). We find no abuse of discretion in the judge's decision to admit the document in evidence for the limited purpose of impeachment.

2. Kivitz and Liptz had served as Dalo's attorneys for several years before Dalo negotiated the Greystone deal.

stone transaction, scheduled to close that day. Upon filing the lawsuit, Kivitz and Liptz terminated their attorney-client relationship with Dalo, withdrew from representing him in all pending litigation, and retained possession of Dalo's files as a lien for over $17,000 in outstanding attorney's fees. For reasons unrelated to the lawsuit brought by the attorneys, Wills never purchased Greystone. The stakeholders for the transaction froze the escrow account pending the outcome of the lawsuit. Ultimately, Dalo lost the opportunity to collect the $87,000 due under the assignment agreement with Wills.

Dalo responded to the lawsuit by filing a nine-count counterclaim against Kivitz, Liptz and D'Arco for injuries he sustained from the conduct of his attorneys regarding the Greystone deal, including the filing of the lawsuit against him.[3] Dalo requested compensatory damages, punitive damages against Kivitz and Liptz, the return of his legal files, and attorney's fees.

The trial judge entered summary judgment against Kivitz, Liptz and D'Arco on the merits of their contract claims against Dalo, concluding that the joint venture agreement was void because Kivitz and Liptz, as Dalo's attorneys, had engaged in a business deal with Dalo while failing to discharge their fiduciary duties owed him in the attorney-client relationship. That ruling was indisputably correct.[4] See Rule 1.8, Rules of Professional Conduct; *Fielding v. Brebbia*, 130 U.S.App.D.C. 270, 272, 399 F.2d 1003, 1005 (1968); *United States v. Orsinger*, 138 U.S.App.D.C. 403, 412, 428 F.2d 1105, 1114, *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 61 (1970).

After a bench trial on Dalo's counterclaims, Judge Taylor determined that Kivitz and Liptz had committed legal malprac-

tice in the form of numerous violations of ethical standards.[5] On appeal, this malpractice liability is undisputed. However, the judge awarded Dalo damages only in the amount of $737.50 for "costs associated with reconstructing [Dalo's] files that Kivitz and Liptz failed and refused to turn over to Dalo." On appeal, Dalo challenges the denial of additional damages in three respects.

## II.

Dalo first seeks attorney's fees as an element of his damages, contending he should be compensated for successfully defending against the contract claims by Kivitz and Liptz and also for prosecuting his own successful malpractice claims against the attorneys.

Dalo takes no issue with the American Rule under which, as interpreted in this jurisdiction, "every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions." *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 35 (D.C.1986). *See also In re Antioch Univ.*, 482 A.2d 133, 136 (D.C.1984); *Biddle v. Chatel*, 421 A.2d 3, 7 (D.C.1980). To justify his claim for attorney's fees, Dalo invokes principles similar to those underlying the exception to the American Rule for wrongful involvement in litigation. *See Auxier v. Kraisel*, 466 A.2d 416, 420–21 (D.C.1983). Under this exception, attorney's fees may be awarded to clients who have been forced into litigation by their attorney's malpractice. *See, e.g., Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C.1989); *Olson v. Fraase*, 421 N.W.2d 820, 828–29 (N.D.1988); *Sorenson v. Fio Rito*, 90 Ill.App.3d 368, 370–73,

---

**3.** Dalo's counterclaim alleged legal malpractice (Count I), breach of fiduciary duty (Count II), intentional interference with contractual relations (Count III), conspiracy to commit tortious conduct (Count IV), abuse of process (Count V), defamation (Count VI), disparagement of title (Count VII), replevin (Count VIII), and punitive damages (Count IX). This appeal stems from the liability of Kivitz and Liptz found on Counts I and II and denied on Count IX.

**4.** Kivitz and Liptz but not D'Arco appealed that decision. The appeal was voluntarily dismissed on February 13, 1991.

**5.** These violations included improperly engaging in business dealings with current clients, filing a lawsuit against the current client, and "precipitous[ly]" terminating the attorney-client relationship with that client.

413 N.E.2d 47, 51–52 (1980); *McClain v. Faraone,* 369 A.2d 1090, 1093–94 (Del.Super.Ct.1977).

> The exception has specific requirements: Where a plaintiff seeks in a separate action to recover attorney['s] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, ... if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person, reasonable compensation for attorney's fees may be recovered as damages against the author of the tortious act.

*Auxier,* 466 A.2d at 420 (quoting *Brem v. United States Fidelity & Guar. Co.,* 206 A.2d 404, 407 (D.C.1965)). Hence there are three requirements for an award under this exception: "(1) the plaintiff must have incurred the fees in the course of prior litigation; (2) ordinarily that litigation must have occurred between the plaintiff and a third party who is not the defendant in the present action; and (3) the plaintiff must have become involved in the underlying litigation as a consequence of the defendant's tortious act." *Id. See Safeway Stores, Inc. v. Chamberlain Protective Servs., Inc.,* 451 A.2d 66, 69 (D.C.1982); *Biddle v. Chatel,* 421 A.2d at 7. This exception to the American Rule has "no application where the litigation is between the same parties." *Murphy v. O'Donnell,* 63 A.2d 340, 342 (D.C.1948).[6]

■ Dalo seeks attorney's fees from Kivitz and Liptz for all of his litigation with them. Because this claim is based on expenses incurred in the lawsuit between the same parties and not litigation that "occurred between [Dalo] and a third party who is not the defendant in the present action [for fees]," the wrongful-involvement-in-litigation exception is inapplicable here.[7] Dalo points out that the litigation also involved the banker D'Arco, who is not involved in the fee claim. Dalo, however, has not claimed attorney's fees for collateral litigation with D'Arco or for any litigation involving independent allegations by D'Arco. His claim for fees against Kivitz and Liptz lacks sufficient involvement with a third party litigant to meet the demands of the exception.

■ Dalo argues, however, that this appeal is not really about the American Rule (and its prohibition on fee-shifting, save in narrow circumstances) at all but instead about whether a client wronged by his attorney's breach of fiduciary duty in suing him can recover as damages attorney's fees directly caused by the wrong. "In cases where the American rule applies," Dalo asserts, "the successful plaintiff has incurred fees to remedy a wrong, but—unlike here—the fees were not directly caused by the wrong itself." The argument is creatively presented, but we conclude that Dalo in effect urges us to create a new exception to the American Rule when an attorney sues a current client in breach of the attorney's fiduciary duty. Since we are unpersuaded that it is possible

---

**6.** Courts have deviated from this requirement of third party litigation in one situation. In cases of a breach of a covenant not to sue or a breach of a release agreement, some courts have held that attorney's fees may be recovered against the breaching party as compensation for expenses incurred defending an action resulting from the breach. *See, e.g., Anchor Motor Freight, Inc. v. International Bhd. of Teamsters, Local Union No. 377,* 700 F.2d 1067, 1071–72 (6th Cir.), *cert. denied,* 464 U.S. 819, 104 S.Ct. 81, 78 L.Ed.2d 92 (1983) (costs and attorney's fees were "a measure of the actual damages which [fee claimant] incurred in defending against the lawsuit which [plaintiff] instituted purportedly in violation of a covenant not to sue contained in the Collective Bargaining Agreement"); *Widener v. Arco Oil & Gas Co.,* 717 F.Supp. 1211, 1217 (N.D.Tex.1989) ("damages

suffered by Defendant as a result of the breach [of release] are the amount of its costs and attorney's fees expended in defending this action"). *But see Gruver v. Midas Int'l Corp.,* 925 F.2d 280 (9th Cir.1991) (under Oregon law the American Rule applies to breach of release cases); *Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990) (no exception to the American Rule for breach of release cases).

Inasmuch as this case involves no breach of an express release or covenant not to sue, we need not decide whether this court would carve out a similar exception to the requirement of third party litigation.

**7.** Thus we need not decide whether Dalo's claim meets the other two requirements of the exception.

to fashion this new exception in a principled way, we reject it.

■ Dalo points out by analogy that, as an item of compensatory damages, plaintiffs in cases sounding in malicious prosecution are entitled to attorney's fees incurred in defending the unmeritorious suit. *See Weisman v. Middleton*, 390 A.2d 996 (D.C.1978). "[R]easonable and necessary legal fees incurred in defending the prior suit[ ]" are, to be sure, traditional elements of a damage award in malicious prosecution cases. *Id.* at 999.[8] But to succeed in such an action, the plaintiff must show that a prior action instituted against him maliciously and without probable cause was terminated in his favor and that he sustained special injury. *Ammerman v. Newman*, 384 A.2d 637 (D.C.1978). "It is generally held that the requisite malice is that dependent on the existence of an improper motive (as distinguished from malice in the technical legal sense), and has also been described as the existence of an evil purpose or motive, a wicked or mischievous intent, or a wilful, wanton, reckless or oppressive disregard [of] the rights of the plaintiff." *Id.* at 640–41.[9] The trial judge, however, found that Kivitz and Liptz lacked malice and had probable cause to file the lawsuit. Although as lawyers they improperly sued a current client, the filing "may have been for reasons which they believe[d] to be legitimate." The judge thus concluded that Kivitz and Liptz "did

not file a suit which they knew to be lacking in merit" and "did not file the suit for the purpose of intentionally interfering with the [real estate] contracts." In view of these findings, which Dalo does not attack, he would not be entitled to damages under a malicious prosecution theory.

Dalo argues, nevertheless, that the breach of duty in this case—a "uniquely improper" lawsuit filed by attorneys against a current client—is a sufficient equivalent to the malice required for malicious prosecution. To accept this analysis, however, would permit clients sued by their attorneys in breach of fiduciary duty to recover damage awards enhanced by awards of attorney's fees, while other clients victimized by malpractice equally severe but not including an attorney-initiated suit would be barred from such enhanced recovery. Moreover, we can discern no principled basis for distinguishing in this regard any other fiduciary who brings suit against a party in what is determined to be a breach of the trust relationship. We thus reject this novel and ill-defined exception to the American Rule.[10]

■ Dalo's remaining argument is that the conduct of Kivitz and Liptz satisfied the conventional "bad faith" exception to the American Rule.[11] Under that exception, the court may award attorney's fees to a prevailing litigant "when the other party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"

8. Attorneys in their professional capacities face potential liability for torts involving malicious prosecution. *See, e.g., Epps v. Vogel*, 454 A.2d 320 (D.C.1982); *Morowitz v. Marvel*, 423 A.2d 196 (D.C.1980).

9. *See Tyler v. Central Charge Serv., Inc.*, 444 A.2d 965, 969 (D.C.1982) (filing a second writ of attachment to issue without investigating the status of payments on the first writ could constitute sufficient malice to support a claim of malicious prosecution).

10. Dalo cites *Winter v. Brown*, 365 A.2d 381, 386 (D.C.1976), to support the argument that attorney's fees incurred in prosecuting an action for legal malpractice are properly characterized as compensatory damages for that case. *See also Foster v. Duggin*, 695 S.W.2d 526 (Tenn.1985); *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 393 So.2d 851 (La.Ct.App.1981), *aff'd*, 422 So.2d

1109 (La.1982). In *Winter* we rejected the argument of negligent attorneys that, to avoid overcompensating the injured clients, the court should reduce the damages awarded against the attorneys by the amount of the contingent fee that would have been due the attorneys absent their negligence. 365 A.2d at 386. Aside from the fact that *Winter* involved circumstances where a malfeasant attorney sought a reduction of a damage award, we regard that case as an application of the *Auxier* exception, see pp. 37–38, *supra*.

11. This argument is made belatedly. Dalo acknowledges that his claim for attorney's fees as damages "relied upon different grounds" in his briefs and that only at oral argument, in response to questioning by the court, did he contend that the conduct of Kivitz and Liptz falls within the bad faith exception to the American Rule.

*Launay v. Launay, Inc.*, 497 A.2d 443, 450 (D.C.1985) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1973) (internal quotation marks omitted)); *see Goffe v. Pickard*, 588 A.2d 265, 271–72 (D.C.1991). In rejecting application of the bad faith exception, the trial judge observed that "[t]his is essentially an equitable claim," the party "seeking equity must do equity," and Dalo's "hands are far from clean." [12] Appellant argues that this is too narrow a ground on which to reject a fee shift, citing the Supreme Court's recent statement in *Chambers v. NASCO, Inc.*, — U.S. —, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991), that "[t]he imposition of sanctions [under the bad-faith exception] *transcends a court's equitable power* concerning relations between the parties and reaches a court's inherent power to police itself" (emphasis added). We do not read this statement, however, as implying that a trial judge may not take into account "clean hands" considerations in deciding whether to shift fees on grounds of bad faith conduct, when the result "incidentally [is to] compensate[ ] the prevailing party for costs which should not have been incurred." *Synanon Found., Inc. v. Bernstein*, 517 A.2d at 37.[13] In any event, the trial judge recognized that the bad faith exception "is intended to punish those who abuse the judicial process." It thus serves a purpose similar to punitive damages. *See Chambers*, 111 S.Ct. at 2137 (quoting *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–46, 36 L.Ed.2d 702 (1973)) ("the underlying rationale of 'fee shifting' is, of course, punitive"). The judge's rejection of Dalo's claim for punitive damages, part III,

*infra*, fully demonstrates her conviction that the attorneys had not acted in bad faith in filing or maintaining the lawsuit. There was no abuse of discretion in her refusal to invoke the bad faith exception. *Goffe*, 588 A.2d at 271.

### III.

■ Dalo next challenges the court's refusal to award him punitive damages. In rejecting the claim for punitive damages, the judge conceded that Dalo had "proven by well beyond a preponderance of the evidence that Kivitz and Liptz committed legal malpractice in numerous respects." She concluded, however, that the conduct did not "rise[ ] to the level of willful or reckless or malicious disregard" of Dalo's rights. We find no error in the judge's ruling.

> Punitive damages are justified only when the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury.... Whether punitive damages will lie depends on the intent with which the wrong was done, and not on the extent of the actual damages.

*Washington Medical Center v. Holle*, 573 A.2d 1269, 1284 (D.C.1990) (citations and quotation marks omitted). Indeed, we have said that "punitive damages are appropriately reserved only for tortious acts which are replete with malice." *Zanville v. Garza*, 561 A.2d 1000, 1002 (D.C.1989). Understandably, therefore, Dalo does not cite a single case in which this court has reversed a refusal by the trier of fact to

---

**12.** The judge found "evidence that there was a partnership agreement" and that "Mr. Dalo knew this and that Mr. Dalo deliberately and calculatedly reneged on that agreement," pursuing "the counterclaim in this case with full knowledge that he reneged on ... that agreement, and he defended against that claim not only for the reasons on which I granted the Motion for Summary Judgment [void agreement] but also on the basis of a denial that there was such an agreement."

**13.** *See Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978)

("*An equity court* has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order") (emphasis added). *Chambers*, moreover, "explore[d] the scope of the inherent power of a *federal court* to sanction a litigant for bad-faith conduct." 111 S.Ct. at 2128 (emphasis added). Nothing in that decision would prevent this court from defining somewhat differently the authority of Superior Court judges to impose sanctions based on traditional concepts of equity.

award punitive damages. *See Holle,* 573 A.2d at 1284 (in case tried without jury, whether punitive damages are warranted rests within discretion of court).

Dalo attempts to surmount this obstacle by arguing that the judge misapprehended the law: that although she twice found no "malicious or reckless or willful" misconduct by Kivitz and Liptz, she must have meant that Dalo failed to prove "actual malice" or evil motivation, when the law is that a lesser showing of reckless indifference will suffice. It would not be surprising if trial judges labored under some confusion about the meaning of malice in this area given the varying formulations in our decisions. *Compare, e.g., Parker v. Stein,* 557 A.2d 1319, 1322 (D.C.1989) ("recklessness, . . . willful disregard of the plaintiff's rights") *with Zanville, supra* (quoting with approval the court's holding in *Queen v. Postell,* 513 A.2d 812, 816 (D.C.1986), that "[t]he punitive damages award . . . was incorrect because the tortious act was not 'aggravated by evil motive, actual malice, deliberate violence or oppression'"). On this record, however, we find no basis for concluding that the judge required Dalo to prove a state of mind exceeding recklessness or conscious indifference to his rights on the part of his attorneys; the judge's express words are to the contrary. In actuality, we think Dalo's complaint is with the evidentiary sufficiency supporting the judge's finding of no reckless or willful misconduct, a matter we review only under the clearly erroneous standard.[14] D.C.Code § 17–305(a) (1989). *See Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (abuse of discretion would include "clearly

erroneous assessment of the evidence"). Applying that standard, we find no abuse of discretion in the denial of punitive damages.[15]

## IV.

◼ We turn finally to the part of Dalo's argument we find to have merit: that the judge erred in dismissing his claim for compensatory damages in the amount of $87,-000 for the loss he suffered as a result of the unwillingness of the Greystone stakeholders to release the escrow funds while the Kivitz and Liptz lawsuit was pending. Dalo was to receive that money if Wills through his own fault failed to purchase Greystone.

The judge dismissed Dalo's claim for the $87,000 because of Dalo's failure to make "any request at all" for the escrowed funds. Thus, the judge held that Dalo's conduct, not the lawsuit tortiously filed by Kivitz and Liptz, was the proximate cause of his loss. The record is unmistakable, however, that the Kivitz and Liptz lawsuit—naming Dalo, the title company, and the escrow agent as defendants—foreseeably caused the funds to be frozen in the escrow account. Hence the filing of the lawsuit was a substantial and direct causal link in the events leading to Dalo's injury, his inability to obtain the funds.[16] As a matter of law, therefore, the filing of the lawsuit was the proximate cause of the injury.

As with any tort action, legal malpractice liability is predicated on a finding that the injury was proximately caused by the breach of duty. *District of Columbia v. Freeman,* 477 A.2d 713, 715–16 (D.C.1984)

14. We reject Dalo's argument that the judge, in denying punitive damages, considered only the malpractice involved in filing the lawsuit rather than the attorneys' other ethical misconduct as well; the preface of the judge's ruling was that the attorneys "committed malpractice in numerous respects."

15. Contrary to Dalo's argument that the judge failed to take account adequately of the breach of fiduciary duty by *attorneys* in this case, we held in *Boynton v. Lopez,* 473 A.2d 375, 378 n. 1 (D.C.1984), that for purposes of punitive damage awards, attorneys

are to be treated as anyone else. . . . [A]ctions do not become more egregious simply because of the professional obligations of the person committing them. There are other well-established mechanisms for disciplining members of the legal profession.

16. Although the trial judge dismissed the Kivitz and Liptz lawsuit in March 1990, their appeal from that ruling was not dismissed until February 1991. Meanwhile, in July 1989, nine months after the Greystone deal fell through, Wills initiated bankruptcy proceedings.

(tortious act must "play a central role" in the injury or be a "substantial factor" leading to the harm). Proximate cause exists when there is a "substantial and direct causal link" between the attorney's breach and the injury sustained by the client. *Id.* at 716.[17] A defendant "will be held responsible for the damages which result despite the entry of another act in the chain of causation" if that subsequent act reasonably could have "been anticipated and protected against." *St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Co.,* 350 A.2d 751, 752 (D.C.1976); *see McKethean v. WMATA,* 588 A.2d 708, 716 (D.C.1991).[18] By contrast, an intervening act not reasonably foreseeable (sometimes referred to as a "superseding cause") breaks the chain of causation and relieves the wrongdoer of liability. *St. Paul Fire & Marine Ins. Co.,* 350 A.2d at 752; *McKethean,* 588 A.2d at 716.[19]

In this case, the evidence established that in early October 1988, after the Kivitz and Liptz lawsuit was filed but before Wills failed to purchase Greystone, the stake-holder refused in writing to release any funds held in escrow "pending the outcome of the suit." At trial the stakeholder testified that after the failure of the Greystone transaction, he was unwilling to release the $87,000 unless certain conditions were satisfied—either all the parties consented to release or a court ordered disposition of the funds. Thus, so long as Kivitz and Liptz maintained their lawsuit (and hence themselves plainly would not agree to the release), the funds were effectively frozen. Certainly it was foreseeable to the attorneys that Dalo would not undertake the futile act of demanding the escrow funds from a stakeholder that had announced it would not release them while the suit was pending.[20] It was also foreseeable that Dalo would not expend the effort to obtain authorizations from other parties whose consent was a necessary but insufficient condition of winning release of the funds. In short, Dalo's failure to request the money or do other acts necessary to obtain it were not intervening causes sufficient to overcome the "central role," *Freeman, su-*

---

17. *See, e.g., Murphy v. Edwards & Warren,* 36 N.C.App. 653, 661–62, 245 S.E.2d 212, 218, *review denied,* 295 N.C. 551, 248 S.E.2d 728 (1978) (clients injured by attorneys' negligence and conflict of interest must show that "had the [attorneys] engaged in completely ethical and proper conduct, the [client] would have been spared the loss"). An attorney's misconduct may result in legal malpractice liability as the proximate cause of injury even when the client has other alternative, equally effective remedies for that injury. *See, e.g., Winter v. Brown, supra* note 10, 365 A.2d at 384–85.

18. *See also, e.g., Collins v. Perrine,* 108 N.M. 714, 718–19, 778 P.2d 912, 916–17 (N.M.Ct.App.), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989) (change in law abolishing joint and several liability not an independent intervening cause that relieved attorney of liability for negligently preparing medical malpractice case and recommending settlement); *John B. Gunn Law Corp. v. Maynard,* 189 Cal.App.3d 1565, 1572–73, 235 Cal.Rptr. 180, 184 (1987) (even though client may have been sued regardless of attorney's deficiencies in drafting will, as long as mistake in will drafting was substantial factor "that caused this whole series of legal events to commence," malpractice liability properly found); *Hilt v. Bernstein,* 75 Or.App. 502, 511–13, 707 P.2d 88, 94 (1985), *review denied,* 300 Or. 545, 715 P.2d 92 (1986) (wife's domestic relations attorney liable for malpractice when husband converted funds for personal use pursuant to power of attorney prepared and approved by wife's attorney, because attorney knew that husband's financial distress had potential to result in conversion); *Shealy v. Walters,* 273 S.C. 330, 337–38, 256 S.E.2d 739, 743 (1979) (attorney liable for malpractice even though unappealed court order caused client to lose title to land when attorney's wrongful alteration of deed caused litigation that resulted in loss); *Ward v. Arnold,* 52 Wash.2d 581, 582–84, 328 P.2d 164, 166–67 (1958) (attorney liable for malpractice even though client failed to have will prepared by attorney properly executed, when client relied on attorney's erroneous advice that will was unnecessary).

19. *See, e.g., De La Maria v. Powell, Goldstein, Frazer & Murphy,* 612 F.Supp. 1507 (N.D.Ga. 1985) (no malpractice liability when attorney's breach of fiduciary duty was proximate cause of injury but consequences were not reasonably foreseeable); *DWL, Inc. v. Foster,* 396 So.2d 726, 728 (Fla.Dist.Ct.App.), *review denied,* 402 So.2d 609 (Fla.1981) (no malpractice liability when client's failure to pay mortgage was intervening cause between attorney's omission and foreclosure).

20. As the trial judge herself acknowledged, "Mr. Dalo testified without contradiction that Miss Benzinger [of the stakeholder law firm] ... told him that no funds would be released because of the lawsuit."

*pra,* played by the lawsuit in causing Dalo's loss. We therefore must reverse the determination of the trial judge to the contrary.

There remains, nevertheless, the question whether Dalo is entitled to the $87,000 representing the facial amount of the money in escrow. In the summer of 1988, developer Wills deposited at least one check for $25,000 and a promissory note for $62,000 in the escrow account. Wills apparently had received a bank commitment to finance the Greystone deal, and there was evidence that during this period he possessed considerable wealth. On the other hand, the stakeholder was informed in December 1988 that there were insufficient funds in the bank to cover the $25,000 check. Kivitz and Liptz argued below that "it is speculative to suggest that there were even funds available to satisfy the liquidated damages provision of the assignment contract as of October 18th, 1988," but the trial judge did not reach this issue in view of her finding on causation. We therefore must remand the case to the trial judge with directions to ascertain, as best she can, the actual value of the instruments in the escrow account as of October 1988, which will be the measure of the loss Dalo sustained from the tortious filing of the lawsuit.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

*So ordered.*