**Walter J. THOMAS, et al., Appellants,**

v.

**Colin L. POWELL, Secretary of the Department of State, et al., Appellees.**

No. 00–5022.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 2001.

Decided April 27, 2001.

G. Arthur Robbins argued the cause for appellants. On the briefs was David G. Whitworth, Jr.

Henry F. Schuelke, III argued the cause for appellees. With him on the brief were S. Robert Sutton, Henry Morris, Jr., and Marc L. Fleischaker.

Before: EDWARDS, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Dissenting opinion filed by Circuit Judge SENTELLE.

RANDOLPH, Circuit Judge.

The Anti–Injunction Act forbids federal courts from granting injunctions "to stay proceedings in a State court," with three exceptions. 28 U.S.C. § 2283. One of the exceptions permits a federal court to enjoin state proceedings when "necessary ... to protect or effectuate its judgments." 28 U.S.C. § 2283. The scope of this "relitigation exception" is the central issue in this case.

Walter J. Thomas cites the Anti–Injunction Act as the reason why the district court erred in issuing an injunction barring him and his co-plaintiffs from prosecuting a lawsuit in the Superior Court for the District of Columbia. We shall assume, without deciding, that the District of Columbia is a "State" within § 2283's meaning. A lawsuit Thomas and others brought in the Superior Court complains about the performance of their attorneys in a class action filed in the United States District Court for the District of Columbia in 1986. Much of the history is recounted in *Thomas v. Albright,* 139 F.3d 227 (D.C.Cir.1998). The federal action began when Thomas and another plaintiff filed a complaint in district court seeking certification as a class action and alleging that the Department of State discriminated against black Foreign Service Officers. *See id.* at 229. After six years of discovery, an amended complaint allowing 30 additional individuals to intervene, the addition of still more class representatives and lengthy settlement negotiations, attor-

neys for parties signed a consent decree resolving the case and agreeing that the district court should certify the class and approve the settlement pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. *See Thomas,* 139 F.3d at 229. By this point, however, the relationship between class counsel and Thomas and several other class representatives had frayed.

At a hearing on January 31, 1996, Thomas complained at length that several of the named class action plaintiffs had neither been informed of, nor agreed with the impending settlement. One month earlier, in December 1995, Thomas had retained another attorney—Barbara B. Hutchinson—to represent his interests. On March 20, 1996, the district court held a preliminary fairness hearing. The new attorney representing Thomas and Allen Latimer (a co-plaintiff in the Superior Court action) argued that because her clients disagreed with parts of the proposed settlement, the court could and should modify it. An attorney representing Odie Fields, Mary Cynthia Smoot, and Alfred Neal (the remaining coplaintiffs in the Superior Court action) argued against the consent decree and urged the district court to reject it. Thomas personally asked the court not to give preliminary approval to the proposed settlement. Despite Thomas's plea, the court tentatively approved the settlement and ordered notice to be given to the 359 putative class members, of which 34 wrote to the court supporting the settlement, while 55 wrote in opposition to it. *See Thomas,* 139 F.3d at 230. On July 15 and 23, 1996, the court held an additional fairness hearing. Attorneys for Thomas and other class members again urged the court to modify or to reject the settlement.

In its final judgment, the district court concluded that the settlement was fair and reasonable, but the court added a provision permitting nine class members to opt out of the settlement. *See id.* On appeal, we held that the district court had abused its discretion in allowing these class members to opt out. We also concluded that the overall class settlement was fair. *See id.* at 233. Five of the class members then sued the class counsel for professional negligence in the Superior Court of the District of Columbia. On a motion by the class counsel defendants, the district court enjoined these class members from pursuing their suit. *See Thomas v. Albright,* 77 F.Supp.2d 114, 124 (D.D.C.1999).

■■■ Thomas and his co-plaintiffs think the Anti–Injunction Act barred the injunction and that the relitigation exception does not apply. The exception rests on the idea that federal courts should not be forced to rely on state court application of *res judicata* or estoppel principles to protect federal court judgments and decrees. *See Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *Toucey v. New York Life Ins. Co.,* 314 U.S. 118, 146, 62 S.Ct. 139, 86 L.Ed. 100 (1941) (Reed, J., dissenting). Although the attorney-defendants in the Superior Court action case were not parties to the concluded federal action, ·traditional preclusion principles may nonetheless bar Thomas and his co-plaintiffs from prosecuting that action against them. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Ethnic Employees of the Library of Congress v. Boorstin,* 751 F.2d 1405, 1409 (D.C.Cir.1985); RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1980). The doctrine of collateral estoppel, or as it is now commonly called "issue preclusion," *see* RESTATEMENT, *supra,* at 1, provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see McLaughlin v. Bradlee,* 803 F.2d 1197, 1201–02 & n. 1 (D.C.Cir.1986); *Otherson v. Department of Justice,* 711 F.2d 267, 273 (D.C.Cir.1983). The relitigation exception to the Anti–Injunction Act therefore permits federal courts to enjoin state court adjudication of those "claims or issues ... [that] ... actually have been decided by the federal court." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. at 148, 108 S.Ct. 1684.

■ Even if a federal court had not decided all the issues raised in the state court action, the relitigation exception could still apply. Assume, for instance, that issues not decided in the federal action would be resolved in plaintiff's favor in the state court. If the plaintiff still could not prevail because an essential element of his state cause of action had already been determined against him in the federal suit, the relitigation exception would permit an injunction against the state proceedings. *See, e.g., Next Level Communications v. DSC Communications Corp.,* 179 F.3d 244, 256–57 (5th Cir.1999) (enjoining entire state court action where state court would be required to decide issues already litigated in federal court); *see also United States v. District of Columbia,* 654 F.2d 802, 809–10 (D.C.Cir. 1981) (finding that relitigation exception permits federal courts to enjoin state proceedings that raise a different cause of action, but still threaten judgment in federal proceeding). In this case, we must therefore compare the complaint in the Superior Court to the record in the class action in order to determine whether, in order for the plaintiff to succeed in Superior Court, that court will have to rule upon an issue or claim already decided by the federal district court or the court of ap-

peals. *See Chick Kam Choo,* 486 U.S. at 148, 108 S.Ct. 1684.

In their Superior Court complaint, Thomas and his coplaintiffs alleged the following:

1. The class action attorneys breached a duty of undivided loyalty to Thomas by " 'selling out' and betraying [the Plaintiffs] ... when they entered into [a] secret agreement" to settle the case without seeking Thomas's approval first. *See* Complaint for Professional Negligence ¶ 28, *Thomas v. Akin, Gump, Strauss, Hauer & Feld, L.L.C.,* No. 99ca1898 (D.C.Super. Ct. filed Mar. 19, 1999); *see also id.* ¶¶ 37, 46, 55, 64 (making same allegations for Thomas's co-plaintiffs).

2. The class action attorneys failed to disclose the alleged conflict of interest created by acting as class counsel and failed to inform Thomas of the negotiating position they would take with the State Department. *See id.* ¶ 29; *see also id.* ¶¶ 38, 47, 56, 65 (making same allegations for Thomas's co-plaintiffs).

3. The class action attorneys failed to follow Thomas's "express instructions regarding the certification of the class action as a Rule 23(b)(3), which would have provided for him to 'opt-out' of the class in order to receive his full measure of damages...." *Id.* ¶ 26; *see also id.* ¶¶ 35, 44, 53, 62 (making same allegation for Thomas's co-plaintiffs).

Thomas and his co-plaintiffs claimed that because of these alleged breaches of duty, they lost their federal cause of action and the potential damages they might have derived from it. *See id.* ¶ 31; *see also id.* ¶¶ 40, 49, 58, 66 (making same allegations for Thomas's co-plaintiffs). They also alleged that they suffered damages by having to retain separate counsel and spend additional time and money dealing with the

federal lawsuit. *See id.* ¶¶ 30, 39, 48, 57, 65.

As to the first two of these claims there can be no doubt that the district court's injunction falls within the exception to the Anti–Injunction Act. Before approving the class action settlement, the district court performed its duty of determining whether the "settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Pigford v. Glickman,* 206 F.3d 1212, 1215 (D.C.Cir. 2000) (internal quotations omitted). The court found that the "settlement was clearly negotiated at arm's length and presents no danger of collusion" between the parties. *See Thomas v. Christopher,* 169 F.R.D. 224, 239 (D.D.C.1996). The court further found that class counsel "fairly and adequately protected the interests of the class." *Id.* While the Superior Court complaint alleges that the class action attorneys "sold out" their clients, that they engaged in collusive secret negotiations to the detriment of their clients, the district court squarely decided otherwise. The Superior Court plaintiffs may not relitigate these matters and an injunction preventing them from doing so in the Superior Court was in order.

The third claim set forth above rests partly on the retainer agreement between Thomas and the class action attorneys, an agreement Thomas says imposed additional duties on the class action attorneys.[1] Thomas's complaint pointed to this language in the agreement:

> In the event there is any offer of settlement that would compromise and resolve all the plaintiffs' claims in *Walter J. Thomas v. Shultz,* C.A. No. 86–2850, the Client hereby agrees to abide by the wishes of the majority of the plaintiffs

with respect to the acceptance or rejection of the settlement offer.

Compl. ¶ 9.

His claim regarding the retainer agreement is part of a larger argument about whether the class action attorneys committed professional negligence. In the District of Columbia, a legal malpractice plaintiff is required to demonstrate duty, breach, causation, and harm. "As with any tort action, legal malpractice liability is predicated on a finding that the injury was proximately caused by the breach of duty." *Dalo v. Kivitz,* 596 A.2d 35, 41 (D.C.1991). For the sake of argument we shall assume that Thomas (and his co-plaintiffs) would be able to make his case in the Superior Court that the class action attorneys had a duty and breached it. Thomas would still have to prove that he suffered a harm as a result. According to the complaint, his harm or injury consisted in his loss of the ability to pursue a potentially lucrative individual claim for damages. *See* Compl. ¶ 31. In explaining his theory of damages to us he adds that had "Conflicted Counsel timely informed the Named Class Representatives of the conflict, or withdrawn pursuant to the retainer agreements, the Named Class Representatives would have earlier engaged independent counsel to protect their personal interests." Brief of Appellants at 17.

This separate counsel would have protected Thomas's personal interests, he thinks, by having the class action certified with opt-out provisions allowing for individual suits. In other words, if the class action had been certified under Federal Rule of Civil Procedure 23(b)(3), rather than Rule 23(b)(2), Thomas and his co-plaintiffs would have been able to opt-out and pursue individual actions (in which they suppose they would have done bet-

---

1. Though the Superior Court complaint does not make this distinction, the retainer agreement is between the class action attorneys and Thomas alone.

ter). *See* Compl. ¶¶ 13–14. To prove this case in the Superior Court, the plaintiffs would have to establish that they were damaged because the class *should* have been certified under Rule 23(b)(3). *See Macktal v. Garde*, 111 F.Supp.2d 18, 21 (D.D.C.2000) (to prove malpractice, must establish that plaintiff had a valid claim); *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C.1949) (same). But that necessarily would entail relitigating an issue already decided in the federal courts.

In *Thomas v. Albright*, 139 F.3d at 235, we rejected the district court's decision to create a hybrid class certified under Rule 23(b)(2) with an opt-out clause. *See Thomas*, 139 F.3d at 230.[2] The district court had made no findings that the class was appropriately certified under Rule 23(b)(3); but the court had "made all the factual findings necessary to show that a hybrid class was not appropriate." *Thomas*, 139 F.3d at 235. We found it unnecessary to remand the case to the district court because "the dissidents do not allege any alternative basis that, if proved, would enable the district court upon remand to permit them to opt out." *Id.* at 237. In our view the claims of the dissident plaintiffs—Thomas and the others—were not "different in kind from those of other class members." *Id.* at 236. We thus held that the class was properly certified under Rule 23(b)(2) with no opt-outs. Thomas's malpractice action could survive only if that holding were relitigated and found to be incorrect.

The only other claim Thomas might have is that the alleged defects in representation damaged him to the extent that he had to hire outside counsel to represent him in the fairness disputes. *See* Compl. ¶¶ 30, 39, 48, 57, 64. Under District of Columbia law, one can sue to recover the cost of retaining additional counsel in response to a lawyer's malpractice. *See Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C.1989). But that narrow claim is undercut by Thomas's own litigation posture here, which is that he wanted the opportunity to bring in individual counsel earlier in the process. It is senseless to suppose that damages resulted from failing to bring in individual counsel to advance the losing claim that the class should be certified either as a hybrid class or a Rule 23(b)(3) class. As we have held, that claim could prevail if and only if Thomas were permitted to relitigate the issues already decided in the class action.

We therefore conclude that if the Anti–Injunction Act applies to the District of

---

**2.** Our conclusion in *Thomas* that there was no basis for certifying a hybrid class necessarily meant that there was no basis for certifying a class under Rule 23(b)(3). Though the case considered the propriety of a hybrid class action—which is different from a pure (b)(3) class action—we explicitly concluded that no plaintiff's claim was sufficiently atypical to justify permitting class members to opt out, which is the key characteristic of both hybrid and (b)(3) class actions. *See Thomas*, 139 F.3d at 236. If an opt out right could not be justified, there would be no reason to certify the class action under 23(b)(3) rather than 23(b)(1) or (2). *See* 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 4.20 (3d ed. 1992) (arguing that Rule 23 requires a court to certify a class action as a (b)(3) class

action only if it cannot be certified under (b)(1) or (2)). Moreover, a hybrid class action is certified under *both* (b)(2) and (b)(3). *See Thomas*, 139 F.3d at 234; *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C.Cir.1997). By finding that a hybrid class action was unjustified, we necessarily found that the claims did not meet (b)(3)'s criteria for an opt out class action. *See Thomas*, 139 F.3d at 235 (noting that the district court did not make findings necessary for a (b)(3) class action and then noting that "[t]o the contrary, the court made all the factual findings to show that a hybrid class was not appropriate"). We therefore disagree with the dissent that the federal proceedings left open the question whether the class could be certified under Rule 23(b)(3).

Columbia, the relitigation exception to the Act permitted the district court to enjoin Thomas and his co-plaintiffs from pursuing their complaint in the Superior Court. Since Thomas has not argued that the court abused its discretion in issuing the injunction, we have no reason to question the court's judgment that the balance of interests, both public and private, weighed in favor of issuing the injunction. *See Thomas,* 77 F.Supp.2d at 123–24.

*Affirmed.*

SENTELLE, Circuit Judge, dissenting:

The decision reached by the majority in this case depends upon the proposition that all issues that could be raised in the malpractice action brought by Walter J. Thomas and his co-plaintiffs were precluded by the disposition of the class action. While this is almost true, I do not think it is entirely so.

In their complaint before the District of Columbia Superior Court, the plaintiffs allege that their counsel entered into a consent decree certifying the class pursuant to Rule 23(b)(2), "[c]ontrary to the express instructions and wishes of the Plaintiffs." The plaintiffs further allege that their attorneys breached a fiduciary duty because the plaintiffs "had rejected any compromise or settlement which would result in a certification of the class pursuant to Rule 23(b)(2), rather than 23(b)(3), which would allow the individual Plaintiffs to 'opt-out' of the class in order to maintain their individual causes of action." It would appear that Thomas and his co-plaintiffs are stating, or attempting to state, a cause of action depending upon the propositions that class counsel had an individual duty to the plaintiffs and that the plaintiffs had instructed counsel not to agree to the (b)(2) certification. These propositions raise factual issues that should be resolved by the D.C. Superior Court.

When the district court approved the settlement in the underlying action and certified the class under Rule 23(b)(2), it noted that "Plaintiffs moved for certification under Rule 23(b)(2)." *Thomas v. Christopher,* 169 F.R.D. 224, 239 (D.D.C. 1996). Similarly, on appeal, this Court stated that "[c]lass counsel repeatedly requested certification pursuant to (b)(2), [and] the consent decree stated that the parties agreed to certification pursuant to (b)(2)." *Thomas v. Albright,* 139 F.3d 227, 235 (D.C.Cir.1998). Indeed, the consent decree barred the district court from "modifying the terms of the agreement." *Id.* at 233. Although the plaintiffs argued for the right to opt out of the settlement during the fairness hearings and again on appeal, they did so within the confines of Rule 23(b)(2). Their arguments would have been unnecessary if their counsel had negotiated for a Rule 23(b)(3) certification.

The majority mistakenly asserts that in order to prevail in their Superior Court case, "the plaintiffs would have to establish that they were damaged because the class *should* have been certified under Rule 23(b)(3)." Slip Op. at 265. Rather, to prevail, the plaintiffs simply would have to establish that the class *could* have been certified under Rule 23(b)(3).[1] That question has never been litigated.

---

**1.** I disagree with the majority's analysis of the *rules governing class actions.* The majority states that "no plaintiff's claim was sufficiently atypical to justify permitting class members to opt out, which is the key characteristic of . . . (b)(3) class actions." Slip Op. at 265 n.2. Rule 23(a) unequivocally states that one prerequisite to *any* class action is that the representative *parties' claims are "typical of the claims . . . of the class."* FED.R.CIV.P. 23(a). Specifically, a 23(b)(3) class action is justified whenever "the court finds that the questions of law or fact common to the members of the class predominate over any questions affect-

Although the plaintiffs were represented separately during the fairness hearings, they contend that they essentially were not represented at the table when counsel negotiated with the State Department. If they had been adequately represented, then their views on opting out surely would have been expressed in the precertification negotiations. *If* the plaintiffs had instructed counsel not to agree to a 23(b)(2) certification and *if* counsel had an individual duty to the plaintiffs (two very big "ifs"), then, as the plaintiffs allege, counsel may have violated its fiduciary duty by (1) not telling them about the conflict between the interests of the plaintiffs and the class as a whole and (2) not advocating the plaintiffs' position in the negotiations. These issues were not addressed by the district court in its initial decision or by this Court on appeal. In fact, these issues could not have been litigated because the consent decree negotiated by counsel locked the district court in to certifying the class pursuant to Rule 23(b)(2). *See Thomas,* 139 F.3d at 233.

The majority assumes, without deciding, that the District of Columbia is a "State" within the meaning of the Anti–Injunction Act, 28 U.S.C. § 2283, suggesting that the scope of the Act's relitigation exception "is

ing only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3). The district court undoubtedly could have certified the *Thomas* class under 23(b)(3), even though—and, perhaps, because—the plaintiffs' claims were "no different in kind from those of other class members." 139 F.3d at 236. Nevertheless, because the consent decree compelled the district court to certify the class under 23(b)(2), it had no reason to confront this question. *Cf. Eubanks v. Billington,* 110 F.3d 87, 96 (D.C.Cir.1997) (refusing to address whether "full (b)(3) protections" should be afforded to the plaintiffs because "the plaintiffs did not seek certification as . . . a (b)(3) . . . class").

the central issue in this case," Slip Op. at 261. In this case, the Court need not assume, much less decide, that the Act applies to D.C.[2] The scope of the relitigation exception is not the central issue in this case. With or without the Anti–Injunction Act, the United States District Court cannot enjoin the ongoing litigation in the Superior Court without some legal basis for doing so. Here, as I understand the appellees' complaint, the basis is that the issues involved in the Superior Court case have been heretofore litigated in the federal litigation. It may be that the appellees should ultimately prevail, but in my view it should be achieved after the litigation of what appear to me to be open issues in the Superior Court.

A court cannot issue a permanent injunction without first finding that the applicant has demonstrated actual success on the merits. *See Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Here, to establish success on the merits, counsel must show that Thomas and his coplaintiffs are collaterally estopped from asserting the issues raised in their malpractice claims. The plaintiffs have not actually litigated the issues I discuss above, nor has any court decided those

**2.** As I have noted before, some sections of the Court Reform Act, Pub.L. No. 91–358, 84 Stat. 473 (1970), require D.C. courts "to be treated as state courts, others do not." *United States v. Mills,* 964 F.2d 1186, 1198 (D.C.Cir.1992) (en banc) (Sentelle, J., dissenting). "Congress has not, for example, plainly extended the prohibition upon the issuance of federal injunctions staying state court proceedings, *see* 28 U.S.C. § 2283, to District proceedings." *Id.* Indeed, whether D.C. courts are protected by § 2283 is a valid question that has not been resolved. There is no reason to suggest that the Anti–Injunction Act plays any role in the outcome of this case.

**268**

issues. Whether we apply the Anti–Injunction Act or the general law governing issue preclusion, our analysis is the same, and the district court plainly erred when it enjoined the D.C. Superior Court. *Compare Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (holding that for the Act's relitigation exception to apply the party moving for an injunction must show that the issue "was itself actually litigated and decided by the District Court"), *with Davis v. Davis*, 663 A.2d 499, 501 (D.C.1995) (explaining that issue preclusion applies when "the issue is actually litigated and ... determined by a valid, final judgment on the merits").

The majority may be correct that Thomas and his coplaintiffs suffered no harm, but that seems to me a merits question and not a preclusion one. That is, if the injunction is lifted, it may well be that the Superior Court can rule that there is no harm, and therefore no cause of action, but I believe that is for the Superior Court to determine and not for us. Like my colleagues, I agree that Thomas and his coplaintiffs' malpractice claim is very shaky. Unlike my colleagues, however, I believe that ruling is not for this Court to make.

For these reasons, I respectfully dissent.