Walter THOMAS, et al., Plaintiffs,

v.

Madeline K. ALBRIGHT, Defendant.

Civil Action No. 86–2850(SS).

United States District Court, District of Columbia.

Dec. 8, 1999.

Charles Lindsay Warren, Warren Eugene Connelly, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, Barbara Bethune Hutchinson, New Carrollton, MD, Carl E. Anderson, Walter & Haverfield, Cleveland, OH (pro hac vice), David Gregg Whitworth, Jr., Whitworth & Smith, P.A., Crofton, MD, Joseph Marc

Sellers, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Theresa Grace Lawhorn Watson, washington, DC, for Plaintiffs.

Richard Neal Reback, U.S. Dept. of Interior, Washington, DC, John Oliver Birch and Meredith Manning, U.S. Attorney's Office, Washington, DC, for Defendant.

S. Robert Sutton, Janis, Schuelke & Wechsler, Washington, DC, for Non Parties.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter is before the Court on Class Counsel's application for preliminary and permanent injunctive relief. Class Counsel seeks to enjoin a lawsuit styled as a malpractice action brought in the Superior Court for the District of Columbia by a group of five former class action plaintiffs.[1]

### The Underlying Class Action

The substantive claims in this case have long since been resolved. In 1986, a group of African–American Foreign Service Officers ("FSOs") sued their employer, the United States Department of State. Plaintiffs alleged discrimination by the State Department in the assignment, promotion, tenuring, performance evaluation, and termination of African American FSOs. The lawsuit sought monetary damages and appropriate injunctive relief.

Following nearly ten years of extensive discovery and negotiations, a proposed settlement was reached by class counsel and the State Department in 1996. The parties agreed that the class should be certi-

fied for settlement under Rule 23(b)(2). The State Department agreed to a draft consent decree that required substantial changes in the Department's employment practices, and enjoined the agency from discriminating on the basis of race against African–American FSOs. Additionally, the Department agreed to pay $3.8 million in monetary damages, reinstate four terminated class members, and retroactively promote seventeen class members.

The law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P., through Warren E. Connelly, Charles L. Warren, and Michael J. Madigan, and others, served as counsel for the putative plaintiff class, and for the class as certified. Joseph M. Sellers and Avis E. Buchanan, of the Washington Lawyers' Committee for Civil Rights & Urban Affairs, also represented the class. This group of attorneys prosecuted the case and engaged the State Department in the settlement negotiations.[2] To help effectuate the settlement, class counsel and lawyers for the State Department agreed that the issue of whether any plaintiff could opt-out of the settlement would be a decision left solely for the Court to determine with class counsel taking no position on the issue. Class counsel communicated to the plaintiffs that the consent decree would be silent on the opt-out issue, and that plaintiffs unhappy with the settlement could argue for the right to opt-out of the settlement before the consent decree was entered, at the fairness hearing to be conducted by the Court.[3]

The five "dissident" plaintiffs each engaged separate counsel to represent their individual interests at the class action fair-

**1.** *Thomas, et al. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P., et al.,* C.A. No. 1898–99, Superior Court for the District of Columbia. The five plaintiffs in that case are Walter J. Thomas, Alan B.C. Latimer, Mary Cynthia Smoot, Odie Fields, and Alfred Neal; each either named plaintiffs or plaintiff-intervenors in the class action (sometimes referred to herein as the "dissident plaintiffs"). Judge Diaz of the Superior Court has stayed that matter pending the outcome of class counsel's application for injunctive relief here.

**2.** These attorneys are the named defendants in the Superior Court action.

**3.** Settlement of a class action lawsuit under Rule 23(e) requires court approval of the settlement and notice to the class members of the proposed settlement. Fairness hearings are conducted to solicit testimony and argument on the fairness of the settlement and adequacy of class counsel's representation of the class in negotiating the settlement.

ness hearing. Thomas and Latimer were represented by Barbara B. Hutchinson; Fields, Neal, and Smoot retained Theresa L. Watson to represent their individual interests. Ms. Hutchinson was retained in December 1995, while the settlement was being negotiated. The dissident plaintiffs, and others, had hired Carl Anderson as additional co-counsel for the class in 1994, but terminated his representation before the fairness hearing in 1996. Court-approved notice of the proposed settlement was transmitted to all class members, informing them of their right to file comments concerning the proposed consent decree, and to appear at the hearing. The objections of Ms. Watson's and Ms. Hutchinson's clients were included in the notice sent to all class members.

The fairness hearing was held on three days in July 1996. At the hearing, the Court heard from every class member who requested an opportunity to speak, and from their legal representatives. Plaintiffs Thomas, Latimer, Fields, Neal, and Smoot, along with others represented by Ms. Watson and Ms. Hutchinson, objected to the consent decree on the ground that it failed to provide an adequate remedy for the wrongs alleged in the complaint. Those plaintiffs argued that they were not fairly compensated for their individual injuries. Those plaintiffs also made it clear that if the Court rejected their arguments and approved the settlement, they should have the right to individually pursue their underlying causes of action. In other words, those plaintiffs sought the right to opt-out of the settlement.

On the merits of the compromise, the Court approved the settlement under Rule 23(e). It found the consent decree "as a whole [was] fair, reasonable, and adequate to the class," and "was clearly negotiated at arm's length and [presented] no danger of collusion." *Thomas v. Christopher*, 169 F.R.D. 224, 239 (D.D.C.1996), *aff'd in part and rev'd in part, Thomas v. Albright*, 139 F.3d 227 (D.C.Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 576, 142 L.Ed.2d 480 (1998). The Court found the settlement to be in the best interests of the class as a whole. While the settlement may not have provided the degree of relief that some individual members sought, the Court approved the settlement based on the benefits it provided to the class generally. The Court specifically found "that class counsel ... fairly and adequately protected the interests of the class." 169 F.R.D. at 239.

The Court addressed the opt-out issue at length. After hearing each of the individual plaintiffs' objections to the settlement, the Court found that some of the plaintiffs had individual equities that would not be satisfied by the agreement. Accordingly, the Court ordered the right to opt-out be made available to class members who did not believe that the settlement and consent decree provided them with appropriate relief for the injury they sustained. It stated:

[I]f Defendant is right and those who want to opt out do have the strongest cases, what a grave injustice would then be done to those parties if the Court were to extinguish their individual rights.

The Court has been impressed with the vehemence with which some members of the class have opposed the settlement. It is quite clear that those members will believe themselves to have been "sold out" if this Court refuses to allow opt out of the settlement.

*Thomas v. Christopher*, 169 F.R.D. at 245.

A group of unsatisfied class members, including the dissident plaintiffs, appealed. On appeal, they argued that the settlement (1) did not effectively address the Department's assignment system, retaliatory acts, or employee records tarnished with discriminatory decisions; (2) did not provide adequate relief in the form of additional or enhanced promotions; (3) was insufficient regarding reinstatement; (4) did not adequately compensate the dissident plaintiffs; and (5) was improperly approved over the objections of the dissident plaintiffs, who were named plaintiffs. *Thomas v. Al-*

*bright,* 139 F.3d at 231–33. Additionally, the dissidents argued that class counsel did not adequately protect the individual interests of the dissident plaintiffs when class counsel agreed to take no position on the opt-out issue, and agreed to a "no modifications" clause in the settlement agreement. The Court of Appeals noted succinctly that "the dissidents complain about particular portions of the overall settlement and claim that they are individually entitled to more." *Id.,* 139 F.3d at 233.

Despite the dissidents' arguments, the Court of Appeals affirmed this Court's finding on the fairness of the settlement, and rejected the challenge to the adequacy of legal representation by class counsel. Particularly, the Court of Appeals wrote:

> Finally, the dissidents argue that class counsel did not act in the interest of the class when counsel agreed to argue that the consent decree was fair and not to advocate the right to opt out, and agreed to the provision of the consent decree stating that the court may not modify the agreement. In our view counsel more than adequately represented the class as a whole.

*Thomas v. Albright,* 139 F.3d at 233.

This Court's granting the right to dissenters to opt out of the settlement was reversed. The Court of Appeals held that under intervening law, that option was not available in this case. *Id.,* at 233–36, *citing Eubanks v. Billington,* 110 F.3d 87 (D.C.Cir.1997). This holding did not affect the findings that the settlement was fair, and that class counsel adequately represented the class.

### The Superior Court Action

The class action having been finally and fully adjudicated, in March 1999, five dissident plaintiffs brought a lawsuit for alleged malpractice against class counsel in the Superior Court for the District of Columbia. The dissident plaintiffs alleged that under a retainer agreement with class counsel, signed by Walter Thomas and others, class counsel was retained to represent plaintiff class members' individual claims as well as their putative class claims. The dissident plaintiffs alleged that class counsel owed fiduciary duties to Thomas and others, as their attorneys, including a duty to represent their interests "without undivided loyalty."

The dissident plaintiffs "do not take issue with this Court's decision on the adequacy" of class counsel's representation of the class, and are not trying to set aside the consent decree or obtain additional remedies not provided for in the settlement. These plaintiffs claim that the Superior Court malpractice action seeks only to recover damages against class counsel "due to the breach of the fiduciary duties owed to Thomas, et al. not as members of the class, but as individuals whom the Attorney Defendants signed retainer agreements with before the inception of the class." Thomas Response Brief at 11.

Class counsel, now defendants in the Superior Court, moved to dismiss the Superior Court action, stating that the fiduciary duty relied upon by the dissident plaintiffs is non-existent, and that the complaint is barred by the doctrine of collateral estoppel. Class counsel received a stay in that court pending the current motion for injunctive relief in this Court. Class counsel describes the so-called malpractice action as a "collateral attack" on this Court's decision, and states that it will suffer irreparable harm by having to endure wasteful relitigation of the adequacy of their representation of the dissident plaintiffs.

■ This Court has ancillary jurisdiction in this matter to vindicate its authority and effectuate its decree in the underlying class action settlement and consent decree. *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Neither party has suggested otherwise. Class counsel also suggests that the Court retains jurisdiction and injunctive power to

effectuate its judgment under the All Writs Act, 28 U.S.C. § 1651.

### The Relitigation Exception to the Anti–Injunction Act

■ Class counsel argues that the Anti–Injunction Act, 28 U.S.C. § 2283, does not preclude this Court from enjoining Plaintiffs' action in the Superior Court. The Anti–Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The purpose of the statute is to promote comity and avoid unseemly conflicts and friction between state and federal courts. *Signal Properties, Inc. v. Farha,* 482 F.2d 1136 (5th Cir.1973); *Euge v. Smith,* 418 F.2d 1296 (8th Cir.1969). The statute was designed to precisely limit and describe a federal court's authority to enjoin state court actions.

■ The exception provided in the statute that allows an injunction "in aid of [the Court's] jurisdiction, or to protect or effectuate its judgments" is commonly referred to as the "relitigation exception." The relitigation exception allows a federal court to enjoin a state court action where, in effect, the state court is asked to relitigate matters already determined by a federal court. This is to preserve the "full fruits and advantages of a federal court's judgment." *In Re National Student Marketing Litigation,* 655 F.Supp. 659, 664 (D.D.C.1987); *see also Samuel C. Ennis & Co. v. Woodmar Realty Co.,* 542 F.2d 45, 49 (7th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977). Under such circumstances, a federal court may issue an injunction to protect the finality of its judgment. Thus, a federal Court may enjoin an action in a state court when issue preclusion (collateral estoppel) or claim preclusion (res judicata) is the source of the movant's application for re-

lief. *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 147, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *Golden v. Pacific Maritime Ass'n,* 786 F.2d 1425, 1427 (9th Cir.1986). The central question is whether an injunction is necessary to protect or effectuate this Court's judgment entered in the class action. This question must be evaluated by first examining class counsel's argument that the Superior Court action is barred on grounds of issue preclusion.

■ Issue preclusion prevents a party in the same or subsequent action from gaining a redetermination of an issue of fact or law when "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits: (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Davis v. Davis,* 663 A.2d 499, 501 (D.C.1995), *quoting Washington Medical Center v. Holle,* 573 A.2d 1269, 1283 (D.C.1990).

Class counsel argues that as a matter of law, judicial approval of the adequacy of class counsel's representation under Rule 23(e) necessarily precludes class members from later suing class counsel for alleged malpractice. Class counsel asserts that the adequacy of their legal representation of the dissident plaintiffs was litigated, and fully and finally decided by this Court. They state that the dissident plaintiffs' objections to the settlement and adequacy of class counsel were fully addressed at the fairness hearing. They note that the dissident plaintiffs were represented by individual counsel at the fairness hearing, and the Court was there presented with objections and argument on behalf of the dissidents. The Court, in approving the settlement, expressly found that class counsel adequately represented the plaintiffs, and class counsel submits that finding was necessary to the Court's approval of the settlement and consent decree under Rule 23(e). Moreover, class counsel submits

that the finding on the adequacy of class counsel was not mere dictum, but essential to the Court's judgment approving the settlement and consent decree. Accordingly, class counsel states that any claim alleging the inadequacy of class counsel would be precluded under the doctrine of collateral estoppel.

Class counsel points to cases in the Sixth, Ninth, Seventh, and Fifth circuits that support their position. In *Laskey v. International Union (UAW)*, 638 F.2d 954 (6th Cir.1981), members of a class action sued class counsel for malpractice after the underlying class action was resolved by a judicially-approved settlement under Rule 23(e). As in this case, in *Laskey*, the dissatisfied class members claimed that class counsel's interests conflicted with their own; that counsel failed to inform members of their right to opt-out of the settlement, failed to inform the class of counsel's claim for reimbursement from settlement proceeds, and that the court improperly accepted settlement over the named plaintiff's objections. The District Court granted summary judgment and injunctive relief in favor of class counsel, and the Sixth Circuit affirmed, stating:

> Since appellants had the opportunity to object to the legal representation at the prior settlement hearing and since a finding that the class was adequately represented is necessary for finding the settlement was fair and reasonable, which in turn was essential to approving the settlement ... appellants are collaterally estopped from now asserting that the legal representation was not adequate and that [class counsel] committed legal malpractice.

*Laskey*, 638 F.2d at 957.

The Ninth Circuit, in *Golden*, also applied the "relitigation exception" in favor of class counsel to uphold an injunction against a state court malpractice and fraud proceeding. There, class counsel had successfully negotiated a judicially-approved consent decree, but dissatisfied plaintiffs sued class counsel in state court, alleging

that class counsel falsely informed plaintiffs that their suit was not a class action, and that class counsel had falsely informed the District Court that plaintiffs endorsed the class action format and settlement. The District Court enjoined the state malpractice case, finding that the "conduct of [class] counsel and the relevant attorney-client relationship were litigated in the *Golden* action during the fairness hearings and addressed by [the] court after [plaintiffs] had a full and fair opportunity to present evidence in favor of their claims." *Golden*, 786 F.2d at 1428. The Ninth Circuit affirmed that finding, noting that plaintiffs had a full and fair opportunity to litigate their malpractice and fraud claims at the fairness hearing, and that the state malpractice action was an attempt to harass class counsel and was in effect "an abuse of the court process." *Id.* at 1429. Class counsel also cite *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 542 F.2d 45 (7th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977) (collateral estoppel precluded state malpractice action against bankruptcy attorneys because the bankrupt had a full and fair opportunity to litigate the fraud issue in the underlying bankruptcy work-out proceeding), and other cases where class action attorneys successfully enjoined state malpractice cases, through the relitigation exception, based on inherent findings of fairness and adequacy of representation in the underlying case. *See, In re Corrugated Container Litig.*, 643 F.2d 195 (5th Cir.1981), *reh'g denied*, 655 F.2d 1131 (5th Cir.1981); *Hutton Construction Co. v. County of Rockland*, 1997 WL 291954 (S.D.N.Y. June 2, 1997).

The dissident plaintiffs argue that in the underlying class action, while the fairness of the settlement and class counsel's representation of the plaintiff class was actually litigated, the discreet issue of whether those attorneys failed to properly represent the dissident plaintiff's individual interests was not a part of the fairness determination.

Plaintiffs argue that *Laskey* and the cases cited by class counsel are not applicable because in those cases, the dissident plaintiffs suggested malpractice arising out of class counsel's conduct in obtaining relief for the class. Plaintiffs claim that in their Superior Court action, they are not contesting the fairness of the settlement or the adequacy of class representation. Rather, they submit that the attorneys failed to properly represent the plaintiffs' individual interests, apart from the class, and thus collateral estoppel would not be applicable. Plaintiffs cite only one case for that proposition—*Beckwith v. Llewellyn,* 326 N.C. 569, 391 S.E.2d 189 (N.C.1990).

In *Beckwith,* a woman brought a malpractice action against the attorney who had represented her and her children in her husband's wrongful death suit. The underlying wrongful death case had been settled for roughly $4 million. The settlement and the payment of attorneys' fees from the settlement were approved by the trial court, as required by North Carolina law where the deceased was survived by minor children—the would-be beneficiaries of the settlement. Plaintiff then filed the claim for malpractice against her attorneys, alleging that the calculation and payment of attorneys' fees was in excess of her initial agreement with counsel, and that counsel never informed the plaintiff that under a second agreement to represent the plaintiff, the fee calculation had changed. The trial court in the malpractice action granted summary judgment in counsel's favor on collateral estoppel grounds, but the North Carolina Court of Appeals reversed, finding that the plaintiff's complaint was grounded on allegations of breach of fiduciary duties and negligence, and therefore "does not constitute a collateral attack by plaintiff on [the] settlement." *Beckwith,* 391 S.E.2d at 190.

*Beckwith* is distinguishable from the instant matter. In *Beckwith,* the complaining plaintiff and her trial attorneys were on the same side in requesting the trial court to approve the settlement along with counsel fees as being fair to the minors involved. The complaining plaintiff did not argue in the underlying matter that the settlement was unfair, or that counsel had taken advantage of her. Thus, the appellate court found that "the focus in the prior case was not whether the attorneys had taken advantage of their client but whether the settlement . . . was fair to the minors involved. . . . [P]laintiff and her attorneys were on the same side." *Beckwith,* 391 S.E.2d at 191–92.

In this case, the dissident plaintiffs *did* object to the terms of settlement, and argued that the settlement was unfair. They retained separate counsel to represent their individual interests at the fairness hearing. In *Beckwith* the trial court did not address the adequacy of counsel's representation of the plaintiff, but rather it only considered the fairness of the settlement to the minor children.

The Court finds that the adequacy of the representation provided by Akin, Gump and the Washington Lawyers' Committee for Civil Rights was actually litigated in this matter. The Court entered a valid, final judgment on the merits after a full and fair opportunity for the dissident plaintiffs to address the merits of class counsel's representation. In fact, those plaintiffs did make their objections known to the Court, and by their individual attorneys argued that the settlement did not *fully address their individual rights.* Indeed, this Court agreed with dissident plaintiffs that they should be allowed to opt out of the settlement so that they could assert their individual causes of action.

The Court's finding that the settlement was fair, and that class counsel did in fact adequately represent the class was essential to its judgment. Rule 23(e) required the Court's finding of fairness as a condition to approval of the settlement. Thus, what is clear is that the settlement and consent decree rest on the essential finding that class counsel adequately represented the plaintiffs.

The dissident plaintiffs, through the Superior Court action, now seek from class counsel the monetary relief that counsel could not obtain in its negotiations with the State Department. While plaintiffs claim not to be attacking the settlement or consent decree, or the adequacy of class counsel's representation in negotiations with the State Department, it is impossible to read that action as anything but a collateral attack on the findings of this Court (and the Court of Appeals) that class counsel fairly and adequately carried out its duties to the members of the class.

Dissident plaintiffs' complaint that class counsel failed zealously to protect the individual interests of the plaintiffs, over those of the class, has no merit. First, the dissident plaintiffs had their own counsel representing their individual interests at the fairness hearing and beyond. That procedure assured that the interests of the dissident plaintiffs would be properly represented, and was the proper route to take when the conflict arose over the settlement. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir.1995). To argue that their individual interests were not zealously prosecuted is to ignore the role played by dissidents' individual counsel, who were retained while settlement negotiations were ongoing, and who appeared as counsel in the proceedings before this Court.

■ Second, the dissident plaintiffs' complaint that Akin, Gump and Lawyers' Committee attorneys failed to advance their individual interests runs counter to the requirements of class counsel in a class action. Class counsel is required to act in the "best interests of the class considered as a unit." *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir.), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982). The Manual for Complex Litigation states clearly that class counsel is responsible for protecting the interests of the class, "even in circumstances where the class representatives—their direct clients—take a position that counsel consider contrary to those interests." *Manual for Complex Litigation* (Third) § 30.43.

Clearly, the action in Superior Court thus attempts to relitigate issues that have already been finally and fully litigated in this forum—the appropriateness of the representation of these plaintiffs by Akin, Gump and the Lawyers' Committee. That action can only be viewed as an attempt to attack and relitigate the findings of this Court and the Court of Appeals. As such, the dissident plaintiffs seek to burden class counsel with the needless expense of "relitigation" in Superior Court. If such a case were allowed to go forward, the consequences to future class actions could be quite severe. First, the threat of a state malpractice action, despite findings of fairness and adequacy of representation in the class action, could discourage future class counsel from attempting to settle and compromise a class action. This is especially true in cases where the class numbers in the hundreds or thousands of individual members—it would be near impossible to satisfy the individual interests of every member of the class. And if class counsel did attempt to satisfy all of those interests, counsel's hands would be impossibly tied in any type of settlement negotiation. The result of such a policy is clear: more protracted litigation without settlement or compromise of the claims and allegations brought by the class. In actions where a class seeks prospective and retroactive injunctive relief, such handcuffing would sound a death knell to class counsel's ability to evaluate its case and negotiate a workable settlement in the best interest of the class as a whole, in a timely manner.

The threat of a malpractice suit of this kind could significantly discourage attorneys from bringing future meritorious class actions. Groups like the Lawyers' Committee, and law firms that are willing to devote their resources essentially on a *pro bono* basis, would be greatly discouraged from reaching out to help deserving class litigants if to do so would likely expose them to the "double jeopardy" of a

state malpractice action.[4] In a world fraught with numerous injustices that can only be vindicated through the vehicle of a class action, attorneys should not be dissuaded from bringing meritorious actions by the threat of a state court malpractice law suit.

The Court is concerned that allowing the malpractice action to proceed necessarily implies a nullification of this Court's findings on the adequacy of counsel's representation of the plaintiffs. It removes one of the Court's most important functions in a class action—protecting the interests of the class members through fairness hearings and other procedures designed to assure that members of the class as a whole are not compromised by the individual interests of a minority of the class, or possibly by the vindictiveness of a few. The Court expects that its findings on the fairness of a settlement, adequacy of notices, and adequacy of class representation are final and have the force of law. The dissident plaintiffs' attempt to relitigate this Court's findings through the ruse of a so-called malpractice action would have the effect of undermining the settlement and consent decree reached in this matter.

*Injunctive Relief*

Having found that the dissident plaintiffs are to be collaterally estopped from relitigating this Court's decision in *Thomas v. Christopher*, through the guise of a state court action styled as a malpractice lawsuit or otherwise, the Court now considers the appropriateness of injunctive relief.

■ To succeed, movants must demonstrate a likelihood of success on the merits, that irreparable injury will result without injunctive relief, that no other parties will be harmed by a grant of such relief, and that the public interest is served by the issuance of the injunction. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C.Cir. 1977); *Serono Laboratories v. Shalala,* 158 F.3d 1313 (D.C.Cir.1998). As discussed above, movants have demonstrated a likelihood of success on the merits.

■ The injury to class counsel, by having to endure wasteful relitigation in state court of an issue already finally decided by this Court is clearly irreparable. *See Laskey,* 638 F.2d at 957; *Golden,* 786 F.2d at 1428–29; *Ennis,* 542 F.2d at 49–50. Additionally, the Court finds that the potential for nullification or compromise of the Court's judgment in the underlying matter is sufficient alone to constitute irreparable injury to class counsel and class members who have received the benefit of the settlement and consent decree. *See Royal Ins. Co. v. Quinn–L Capital Corp.,* 759 F.Supp. 1216, 1237 (N.D.Tex.1990), *rev'd in part on other grounds,* 960 F.2d 1286 (5th Cir.1992).

■ The harm to other parties, particularly the dissident plaintiffs who brought the malpractice suit, is limited at best. Those plaintiffs, as class members, were entitled to receive the benefits resulting from the settlement of the class action. Those plaintiffs already have been given an adequate forum (i.e. at the fairness hearing) to air their individual grievances. Their objections were taken into account by this Court. After hearing their objections to the settlement, the Court granted them the right to opt out of the settlement. Although the Court of Appeals did not agree with this determination, the dissidents' position was given full consideration. Fairness does not require that plaintiffs be afforded still another opportunity to air their grievances in the form of a malpractice action in state court.

---

4. This case lasted over a period of ten years. Class counsel at the Lawyers' Committee, Akin, Gump, and Walter & Haverfield devoted more than 30,000 hours litigating and negotiating the settlement, which provided $1.4 million for legal fees, approximating $47 per hour, well below those attorneys' normal hourly rates and the D.C. Circuit guidelines. *See Thomas v. Christopher,* 169 F.R.D. at 235. It is clear that this case was taken on a quasi-pro bono basis, in the best traditions of the legal profession.

■ What is more, injunctive relief in this case is in the public interest. The public interest favors finality of Court judgments. Further, injunctive relief will promote the justifiable use of the federal class action device in meritorious cases without exposing counsel to duplicative state court lawsuits when class counsel properly discharges their duties to the class as a whole. The public interest is served by reducing the potential for the constant relitigation of issues between this nation's state and federal court systems. *Royal,* 759 F.Supp. at 1237–38.

In accordance with the above an injunction will issue precluding the dissident plaintiffs from prosecuting their action in Superior Court.

### *ORDER*

This matter comes before the Court on class counsel's application for preliminary and permanent injunctive relief. Class counsel seeks to enjoin prosecution of a lawsuit styled *Thomas, et al. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P., et al.,* C.A. No. 1898–99, which is currently filed in the Superior Court for the District of Columbia.

A hearing was held on class counsel's application for relief on October 29, 1999, and parties' positions were fully briefed and argued. For the reasons set forth in the accompanying Memorandum Opinion, it is, this Seventh day of December, 1999:

ORDERED that class counsel's application for permanent injunctive relief is GRANTED, and it is further

ORDERED that Walter J. Thomas, Alan B.C. Latimer, Mary Cynthia Smoot, Odie Fields, and Alfred Neal, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, acting individually or as representatives of a class, are hereby enjoined from prosecuting the lawsuit styled *Thomas, et al. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P., et*

*al.,* C.A. No. 1898–99 in the Superior Court for the District of Columbia.

SO ORDERED.