# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TIFFANY HERNANDEZ and )
JOSE HERNANDEZ-ALVAREZ, )
Individually and as guardian ad litem )
for their child L.H., )
               Plaintiff, )
  )   C.A. No.: N23C-11-112 FJJ
     v. )
  )
BAIRD MANDALAS BROCKSTEDT & )
FEDERICO, LLC; CHASES T. )
BROCKSTEDT; PHILIP C. FEDERICO; )
BRENT CERYES; STEPHEN A. SPENCE; )
SCHOCHOR, STATON, GOLDBERG, )
AND CARDEA, P.A., )
               Defendants. )

Submitted: April 24, 2024
Decided: May 13, 2024

## OPINION AND ORDER
## ON DEFENDANTS' MOTION TO DISMISS
## GRANTED

*Thomas Crumplar, Esquire*, Jacobs & Crumplar, Wilmington, DE; *Jonathan Nace, Esquire*, Rockville, MD, Attorneys for Plaintiffs.

*M. Claire McCudden, Esquire,* Marshall Dennehey, P.C., Wilmington, DE; *Josh J.T. Byrne, Esquire*, Philadelphia, PA, Attorneys for Defendants Baird Mandalas Brockstedt & Federico, LLC, Stephen A. Spence, and Chases T. Brockstedt.

*Marc Sposato, Esquire and Emmanuel-De Luna, Esquire,* Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Wilmington, DE, Attorneys for Defendants Philip C. Federico, Brent Ceryes, and Schochor, Staton, Goldberg, and Cardea, P.A.

**Jones, J.**

This is a legal malpractice claim against the Defendants arising out of their representation of Plaintiffs who were a part of a class action involving claims against Mountaire Corporation and its affiliates ("Mountaire"). The claims against Mountaire involved allegations that Mountaire caused groundwater contamination and air pollution within the Millsboro, Delaware community. The class action against Mountaire was settled and a fund and process was established to deal with claims arising from Mountaire's actions. Plaintiffs are the parents of L.H., a minor. Defendants are attorneys and their law firms (and successor law firms) who prosecuted the class action against Mountaire. Defendants represented Plaintiffs in the underlying action. Plaintiffs have filed a 5 count complaint based on: (1) legal malpractice; (2) reckless conduct; (3) promissory estoppel; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing. Defendants have moved, pursuant to Superior Court Civil Rule 12(b)(6), to dismiss Plaintiffs' Complaint. Briefing has been completed. The matter is now ripe for decision. This is the Court's decision on Plaintiffs' Motion to Dismiss.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion to dismiss Delaware law requires courts to accept all well-pled allegations as true.[1] Then, the Court must apply a broad sufficiency test to determine whether a Plaintiff may recover under any "reasonably

---

[1] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

conceivable set of circumstances susceptible of proof under the complaint."[2] If the complaint "gives general notice as to the nature of the claim asserted against the Defendant," Delaware law disallows dismissal.[3] A complaint is not dismissed "unless it is clearly without merit, which may be either a matter of law or fact."[4] Further, a complaint's "[v]agueness or lack of detail," alone, is insufficient to grant dismissal.[5] Thus, if there is a basis upon which the Plaintiff may recover, the motion must be denied.[6]

Generally matters outside of the complaint may not be reviewed on a motion to dismiss.[7] There are exceptions to this rule and one of those exceptions arises "where the complainant refers to other proceedings or judgments, and specifically bases his right of action, in whole or in part, on something which appears in the record of the prior cause."[8] Delaware courts routinely consider collateral estoppel arguments on motions to dismiss and grant those motions where it is plain from the pleadings and the matters of which the court may take judicial notice that the pending claims are barred by collateral estoppel.[9]

The central issue in this Motion is the collateral estoppel effect of a Claims

---

[2] *See Id.* at 535.
[3] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).
[4] *Id.*
[5] *Id.*
[6] *See Id.*
[7] *Doe 30's Mother v. Bradley*, 58A 3.d 429 (Del. Super. 2012).
[8] *Frank v. Wilson & Co.,* 32 A.2d 277 (Del. 1943); *Hardy v. Jacobs & Crumplar et. al.,* 2015 WL 1598091 (Del. Super., 2015
[9] *PVP Ashton, OOC et. al. v. Financial Structures Limited, et. al.,* 2023 WL 2728775 (Del Super. 2023).

Administrator's decision which arguably set the minor Plaintiff's damages. As such for purposes of the factual record necessary to deal with the instant motion, the Court will take judicial notice of the record in the underlying class action suit against Mountaire.

## ANALYSIS

Plaintiffs' first cause of action is based on a claim of legal malpractice. The essence of Plaintiffs' claim is that the Defendants were negligent in failing to advise Plaintiffs to affirmatively opt out of the class in order to pursue an individual claim given the nature and extent of the minor's injuries.

Under Delaware law, for a Plaintiff to maintain a legal malpractice action she must meet each prong of a three element test which includes proving (1) the employment of an attorney; (2) the attorney's neglect of a professional obligation; and (3) resultant loss.[10] To prove the third element, the damages element, the Plaintiff in a legal malpractice action must demonstrate that "but for his lawyers' negligence, Plaintiff would have been successful in the underlying action."[11] "Thus, in order to sustain a claim of professional negligence against a Delaware attorney, Plaintiff must establish the applicable standard of care through the presentation of expert testimony, a breach of that standard of care, and a causal

---

[10] *Healthrio, Inc. v. Margules et. al.* 2007 WL 544156 (Del. Super. 2007).
[11] *Id.*

4

link between the breach and the injury.[12]  The instant motion to dismiss focuses on the third element, proximate cause.

Defendants maintain that the Claims Administrator's decision establishes that Plaintiffs cannot meet their burden of proving that L.H.'s injuries were proximately caused by the actions of Mountaire.  Therefore, Defendants maintain that Plaintiffs cannot succeed in a legal malpractice action.  Plaintiffs contend that the Claims Administrator's decision has no collateral estoppel affect.

Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated.[13]  Under the collateral estoppel doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."[14] For collateral estoppel to bar consideration of an issue of fact:

1. The prior action must be a final adjudication on the merits by a court of competent jurisdiction;

2. The issue of fact decided must be the same as the one presented in the subsequent case;

3. The party against whom the doctrine is invoked was the same party in the prior action; and

---

[12] *Id*; *Middlebrook v. Ayers*, 2004 1284207 (Del. Super. 2004).
[13] *PVP Aston, PPC et. v. Financial Structures Limited et. al.,* 2023 WL 2728775 (Del. Super. 2023).
[14] *Id; Hercules v. AIU Ins. Co.*, 783 A.2d 1275 (Del. 2000).

4. The party against whom the doctrine is invoked "had a full and fair opportunity to litigate" said issue of fact in the previous action.[15]

Collateral estoppel extends not only to issues decided by courts, but also to issues decided by administrative agencies acting in a judicial capacity where the parties had a full and fair opportunity to litigate.[16] The question in the instant case is whether the decision of a claims administrator has a binding effect for purpose of collateral estoppel. This Court concludes that it does.

On December 23, 2020, a Motion for Preliminary Approval of the class action suit was filed. On this same day, the instant Plaintiffs were notified of the proposed settlement.[17] Preliminary approval of the settlement by the Court occurred on January 7, 2021.[18] The Order of Preliminary Approval ordered a Notice and Claims procedure that demanded any claimant seeking to "opt-out" must do so no later than 40 days after the entry of this Order.[19] Plaintiffs received a letter from Defendants advising them to register their claim. Plaintiffs registered their claim and did not opt out.

On April 12, 2021, a fairness hearing was held. Shortly thereafter the Court issued a decision approving the Mountaire settlement. The following relevant portions of the Court's decision approving the settlement provided:

---

[15] *Oakes v. Clark*, 2012 WL 5392139 (Del. Super. 2012).
[16] *United Parcels v. Hawkins,* 2024 WL 666726 (Del. 2024); *Betts v. Townsend, Inc.*, 765 A.2d 531, 534 (Del. 2000); *Messick v. Star Enterprise*, 655 A.2d 1209 (Del. 1995).
[17] Complaint, ¶75.
[18] Complaint, ¶75.
[19] Complaint, ¶76.

6

**Allocation of Settlement Proceeds**

Plaintiffs have proposed that a Claims Adjudicator be retained for the allocation of the proceeds of the Settlement Agreement. Specifically, Plaintiffs have proposed, and Defendants have consented to, the Hon. Irma Raker (Ret.) serving as Claims Adjuster.

Judge Raker has extensive class action allocation experience, having recently led the distribution of settlement proceeds from a $190 million settlement to approximately 9,000 claimants in *Jane Doe No. 1, et al. v. Johns Hopkins Hospital, et al.,* No. 24-C-13-001041 (Md. Cir. Ct. 2014). Judge Raker has also served as an Associate Judge of the District Court of Maryland, Montgomery County from 1980 to 1982, Associate Judge of the Circuit Court for Montgomery County, Maryland from 1982 to 1992, and on the Maryland Court of Appeals from 1994 until her retirement in 2008.

The Claims Adjudicator will evaluate each claim and categorize each claimant to determine fair, reasonable, and equitable compensation based upon the established categories of damage and the Allocation Plan, attached as Exhibit C to the Motion. In doing so, the Claims Adjudicator will utilize the injury categories and additional factors noted in the Allocation Plan. Following notification to each claimant of their allocation, a period will be provided during which each claimant may appeal to the Claims Adjudicator before the allocation becomes final. An estimate of Judge Raker's fee in connection with this service is provided as Exhibit 1 to the Motion.

\* \* \* \*

The Court approved Plaintiffs' propped Notice Plan, finding it was consistent with Rule 23(c)(2), represented the best practicable notice under the circumstances, and was reasonably calculated to apprise Class Members of the facts of this litigation and their rights with respect to the Settlement Agreement.[20]

Class Counsel complied with this Court Order by directly mailing notice of the proposed Settlement to over 6,720 current and former residents within the Class Area.[21] Similarly, Class Counsel

---

[20] D.I. 610.
[21] Declaration of Melissa Baldwin, attached as Exhibit B to Motion.

provided publication Notice through newsprint advertisements and an internet site in a manner consistent with the Notice Plan.[22] Having provided Notice to the Class Members in the manner directed by the Court, Plaintiffs have satisfied Rule 23(c)(2) and 23(e). I find that Class Counsel provided sufficient notice of the Settlement Agreement to Class Members.

\* \* \* \*

In *Jane Doe 30's Mother v. Bradley*[23] the Court applied a two-step process to its fairness analysis. The Court first conducts a preliminary review to determine any patent grounds to question the fairness. I have done that here and found none.

Second, the Court is required to conduct a fairness hearing to receive evidence in support or in opposition to the settlement. We have done that today, and I find that under all relevant factors the settlement is fair. I reviewed the following:

(1)     The advantages of the settlement as opposed to the outcome at trial;
(2)     Duration and costs of trial;
(3)     Extent of participation in settlement negotiations by class representatives and by special master;
(4)     Number and force of objections by class members;
(5)     Effect on other actions;
(6)     Fairness of the claims administration process;
(7)     Intrinsic fairness of the settlement terms; and,
(8)     Extent class representatives only get monetary relief.[24]

Here all the facts are met, but several deserve comment. The settlement amount is substantial. Liability is significant at issue, and success at trial is subject to doubt. The length and expense of trial and potential appeals are enormous. No class members are objecting to the settlement. Finally, the monetary relief will be administered through a comprehensive claims process to share the fruits of the efforts with all class members after evaluating each class members' damages.

---

[22] *Id.*
[23] 64 A.3d 379 (Del. Super., Nov. 19, 2012).
[24] *Crowhorn*, supra.

8

*  *  *  *

One other claim is worth comment. The "commenters" contend that class counsel never intended to see the case through, and were seeking a quick settlement which was in the Class Counsel's interest. I need only point to Class Counsel's substantial effort in time, and expenditure of money in costs to refute this claim. I saw the vigorous and determined work of Class Counsel expended to prove the case, in the face of an equally determined defense. Class Counsel's work was the opposite of a sellout.

*  *  *  *

Class Counsel worked diligently and professionally to bring about what to me is a remarkable result. They faced formidable opposition who contested everything, at least one time in a way that, for me, was beyond reasonable boundaries. This Court wrote no less than ten (10) full opinions on important and potentially case dispositive issues. I point that out not as a pat on the back to the Court – the work is our job and responsibility. But preceding each opinion is counsel's efforts to create the record to allow the decision, and to brief and legally argue the merits. All of this work was done in a timely fashion, and often under significant time constraints. In addition, the work was done in the midst of a world-wide pandemic.

The April 12, 2021 Order approving the settlement made reference to the Allocation Plan.  A provision of that allocation plan provides in part:

> Claimant shall be barred from bringing any action against the Releasees (as defined in and to the extent set forth in the Settlement Agreement), Plaintiffs' Counsel, the Claims Adjudicators, or the Claims Administrators, concerning the allocation received.

At some point after the opt out period expired, L.H. and her family retained Thomas Crumplar. Mr. Crumplar wrote a letter to Class Counsel on March 22, 2022 making a number of complaints against class counsel. The letter concluded with "In candor, the Hernandez family may also seek leave to opt out of the class and proceed directly against Mountaire for their child's case, as well as anyone

9

else in their family who is part of the class."[25] Mr. Crumplar filed a significant claim package with the Claims Administrator on behalf of L.H. which was complete with economic losses totaling "between $8.6 and $21.7 million."[26] The demand package submitted included an expert report from a toxicologist which identified that "pre-term birth", "spontaneous abortions," and "developmental effects" due to the known effects of hypoxia on normal development were causally linked to ingestion of nitrates by pregnant women.[27] The submission included authoritative sources which supported the premise that nitrate exposure had positive associations between increasing textiles of nitrate levels and prevalence of term premature rupture of membranes. After a review of Plaintiffs' claim the Claims Administrator issued a Tier 1 award of $2,500. Counsel filed an appeal of that award per the plan. After further evaluation, which included the Claims Administrator's consultation with an independent physician in the field of maternal/fetal medical obstetrics/GYN and Public Health, the Claims Administrator denied the appeal.[28]

Following the second denial of the claim, Plaintiffs filed a "Motion to Amend Orders Granting Preliminary and Final Approval to Class Settlement" in the Mountaire action. As described by Judge Karsnitz, the motion was far reaching

---

[25] D.I. 662.
[26] Complaint, ¶85.
[27] Complaint, ¶86.
[28] May 9, 2023 decision page 8 citing Letter of Special Master/Claims administrator April 26, 2023; D.I 666.

10

and would have disrupted the entire class. Judge Karsnitz denied most of

Plaintiffs' request for relief. In doing so he wrote:

> Time does not allow me to devote to a full analysis of the
> Rule 60(b) argument. In my view, the compelling
> response is that the delay between the time counsel for
> L.H. became aware of the issue (at least as early as March
> 2022), and the filing of the motion a year later precludes
> Rule 60(b) relief.[29] In addition and despite the
> misgivings, counsel for L.H. decided to move forward
> within the confines of the class process. Counsel candidly
> admitted at the hearing he thought L.H.'s claims could be
> appropriately processed under designed methodology.
> Any challenge to it has, for me, been waived.

Notwithstanding his conclusion, Judge Karsnitz ordered the Claims

Administrator to take a "third look".

What happened next is set forth in Plaintiffs' Complaint in this case at

paragraphs 101-107.

> 101. L.H. submitted additional supplemental materials
> including expert reports from a board certified
> Environmental and Occupational Exposure physician,
> and a separate physician board certified in Obstetrics and
> Gynecology.

> 102. It was discovered in this "third look" that the Claims
> Adjudicator had accepted an undisclosed OBGYN
> medical physician's report that preterm labor was the
> result of an unexplained placental abruption.

> 103. However, this OBGYN was interviewed by L.H.'s
> counsel as part of the "third look" and agreed that "Yes.

---

[29] *Sens Mechanical, Inc. v. Dewey Beach Enterprises, Inc. et al.,* 2015 WL 5157210, at *3-4 (Del. Super. June 19, 2015).

11

There's an association between nitrites [sic] and preterm birth."

104. Plaintiffs two new physicians eliminated the possibility that unexplained placental abruption caused the preterm labor, as the labor preceded without any evidence of bleeding from an abruption, and the delivery was not consistent with induction of labor by placental abruption.

105. Additionally, a hydrogeologist's report was provided.

106. The hydrogeologist provided to the Claims Adjudicator that during the time period October 2016-March 2017 [the pregnancy of L.H.] more likely than not exceeded 10 ppm. The nitrate level would have fluctuated over time, but more likely than not it was higher than 10 ppm during the time period of interest.

107. Nevertheless, whether due to economic interest, professional pride, or some other unknown factor, the Claims Adjudicator refused to increased her absurdly low award of $2,500.00 confirming that the Class Action Settlement was an inappropriate, inadequate, negligent and reckless strategy for Defendants to advise these Plaintiffs participate in.

When the instant factual record is viewed through the eyes of the collateral estoppel test the following is clear:

1. The Claims Administrator's decision was a final adjudication on the merits by a court of competent jurisdiction as the claims process was an approved process set up by Judge Karsnitz.

12

2. The issue of fact determined by the Claims Administrator is the same issue of fact that must be determined in the instant action. Namely whether L.H.'s injuries are related to the Mountaire contamination;

3. The party against whom the doctrine is invoked (the Plaintiffs in this case) was the same party to the prior action.

The parties do not seriously contest that the first three elements of issue preclusion are met. Where they differ is whether the claims process afforded the Plaintiff a "full and fair opportunity" to litigate the causation issue. According to Plaintiffs, they did not have a full and fair opportunity to litigate the causation issue. Plaintiffs' view is that full and fair opportunity to litigate means that they must have had all of the tools available to them in the claims process that they would have had available to them in civil litigation, including the right to cross examination any expert relied upon by the Court. Defendants maintain that the process provided to the Plaintiffs under the plan gave them a full and fair opportunity to present their claims.

Having considered the entirety of the record, this Court is satisfied that the Plaintiff had a full and fair opportunity to present their claims to the Claims Administrator. Plaintiffs' counsel conceded at the argument on Motion to Amend Orders Granting Preliminary and Final Approval to Class Settlement that counsel

13

believed L.H.'s claims could be appropriately processed under the designed methodology.[30] This concession was made shortly after Plaintiffs learned at the hearing that $17,000,000 remained in the settlement fund when they thought not enough remained for their claim, which they valued between $7,000,000 to $22,000,000. When Judge Karsnitz gave Plaintiffs a third chance to go before the Claims Administration, Plaintiffs supplemented the record. As adequately described in their Complaint, the Plaintiffs took the following actions:

> 101. L.H. submitted additional supplemental materials including expert reports from a board certified Environmental and Occupational Exposure physician, and a separate physician board certified in Obstetrics and Gynecology.
>
> 102. It was discovered in this "third look" that the Claims Adjudicator had accepted an undisclosed OBGYN medical physician's report that preterm labor was the result of an unexplained placental abruption.
>
> 103. However, this OBGYN was interviewed by L.H.'s counsel as part of the "third look" and agreed that "Yes. There's an association between nitrites [sic] and preterm birth."
>
> 104. Plaintiffs two new physicians eliminated the possibility that unexplained placental abruption caused the preterm labor, as the labor preceded without any evidence of bleeding from an abruption, and the delivery was not consistent with induction of labor by placental abruption.

---

[30] May 9, 2023 decision page 8 citing Letter of Special Master/Claims administrator April 26, 2023; D.I 666.

105. Additionally, a hydrogeologist's report was provided.

106. The hydrogeologist provided to the Claims Adjudicator that during the time period October 2016-March 2017 [the pregnancy of L.H.] more likely than not exceeded 10 ppm. The nitrate level would have fluctuated over time, but more likely than not it was higher than 10 ppm during the time period of interest.

These actions reveal that the Plaintiffs took full advantage of their opportunity to supplement the record. Not only did Plaintiffs submit expert materials but they had an opportunity to have a discussion with the OBGYN expert that the Court had consulted and had that doctor agree that there's an association between nitrites and preterm birth.[31] It is obvious that this discussion was not sufficient enough for the Claims Administrator to change her decision. But the point is that the Plaintiffs had the opportunity to question the doctor. On this record, this Court concludes that Plaintiffs were afforded a full and fair opportunity to litigate the issue of the causation of Plaintiff's injuries to Mountaire's actions.

It is well settled that decisions of Administrative Agencies are given collateral estoppel effect.[32] L.H. had a full and fair opportunity to litigate the causation issue. Not only was the claims process followed, but after an application

---

[31] Plaintiffs maintain that the Claims Administrator served as a finder of fact because she retained an independent expert. Retention of an expert of the Court is permitted under Delaware law. D.R.E. 706.
[32] *United Parcels v. Hawkins,* 2024 WL 666726 (Del. 2024); *Betts v. Townsend, Inc.*, 765 A.2d 531, 534 (Del. 2000); *Messick v. Star Enterprise*, 655 A.2d 1209 (Del. 1995).

to Judge Karsnitz, he amended the claims process and allowed L.H. to file a third claim with the Claims Administrator. L.H. was the only complainant given a third bite at the apple. L.H. presented extensive evidence on behalf of L.H.'s claim. Notwithstanding this evidence the Claims Administrator found a lack of causation.

Citing the Court to *Sherman v. Ellis*,[33] Plaintiffs maintain that where the malpractice involves a "transactional claim" rather than a "litigation claim," collateral estoppel cannot bar a claim. First, the instant claim is a litigation claim not a transactional claim. Second, the premise of Plaintiff's argument is that the Court accepted a relaxed standard of proof. In reversing the Superior Court in Sherman the Delaware Supreme Court agreed that the traditional 'but for" test remained in both litigation and transactional malpractice claims. Finally, even if the allegations against Defendants somehow fall into the transactional world, the allegations relied upon by the Plaintiffs to support this 'transactional" claim are based on not excluding the minor from the class and not negotiating terms that encompass minors with catastrophic injuries. As the record makes clear there was sufficient funds remaining in the trust at the time of the Motion to Amend Orders Granting Preliminary and Final Approval to Class Settlement and Plaintiff at that

---

[33] 2020 WL 30393 (Del. Super., 2020, rev'd 246 A.3d 1126 (Del. 2021).

16

time advised the Court that the claims process was adequate to deal with the minor's claims.[34]

In addition to the Claims Administrator's decision, the fairness decision of Judge Karsnitz also acts as a preclusion to Plaintiff's claims. In all class actions, the class counsel must establish that the settlement was fair to the class members.[35] For this reason, courts have been very hesitant to allow individual class members to maintain legal malpractice actions against class counsel.[36]

In *Thomas*, the Court specifically noted: "The Court's finding that the settlement was fair, and that class counsel did in fact adequately represent that the settlement was fair, and that class counsel did in fact adequately represent the class was essential to its judgment. Rule 23(e) required the Court's finding of fairness as a condition to approval of the settlement. Thus, what I clear is that the settlement … rest[s] on the essential finding that class counsel adequately represented the Plaintiffs."[37]

In *Wyly v. Weiss,* the Court determined class members could not establish a breach of duty as a matter of law because the underlying court had to determine

---

[34] Additionally, there is no allegation in the Complaint that Mountaire would have accepted additional terms.
[35] *See* Superior Court Civil Rule 23.
[36] *See e.g. Thomas v. Albright*, 77 F.Supp.2d 114, 123 (D.D.C 1999); *Med. & Chiropractic Clinic, Inc. v. Oppenheim,* No. 8:16-CV-1477-T-36CPT; 2018 WL 3707836, AT *11 (M.D. Fla. Aug. 3, 2018), *aff'd*, 981 F.3d 983 (11th Cir. 2020); *Mendel v. Randolph*, No. 19-CV-03244-JST, 2021 WL 2123578, at *8 (N.D. Cal. 2021), *aff'd*, No. 21-15910, 2022 WL 2526965 (9th Cir. 2022) *citing to Laskey v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW),* 638 F. 2d 954, 967 (6th Cir. 1981).
[37] *Thomas*, 77 F.Supp.2d at 121.

that class counsel's fees were "fair and reasonable" based upon the performance of class counsel.[38] The Court in *Wyly* stated:

> These allegations, which are designed to state a claim that the Appellees "failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, constitute a collateral attack on the District Court's findings that he Settlement was 'fair, reasonable, and adequate,'" that class counsel was entitled to an award of attorneys' fees, and that those fees were "fair and reasonable." Those findings were possible only if counsel's performance met or exceeded the minimal standards of professional competence otherwise an award of fees would not have been fair and reasonable in the circumstances. We therefore conclude that the state court action seeks to relitigate the same issue that the District Court already resolved.[39]

A finding that the class has been adequately represented is implicit in an approval of a class settlement because in order to find that a settlement was fair and reasonable, the class has to be adequately represented.[40]

In the underlying action, Judge Karsnitz evaluated the Defendants representation as Class counsel and held that notice was proper, the settlement was fair and he approved the award of attorneys' fees and costs and found that the Class Counsel worked diligently and professionally in order to arrive at a "remarkable result." The underlying court's findings that representation of the class was adequate to approve the settlement serves as an independent basis, beyond the

---

[38] *Wyly v. Weiss*, 697 F.3d 131, 141-42 (2d Cir. 2012).
[39] *Id*. at 142.
[40] *Laskey v. UAW*, 638 F.2d 954, 957 (6th Cir. 1981); *Thomas v. Powell*, 247 F.3d 260, 264 (D.C. Cir. 2001).

Claims Administrator's decision, to give preclusive effect to Plaintiffs' assertion that Defendants committed malpractice.

L.H.'s injuries are tragic and the effect on the Hernandez family is significant and lifelong. This cannot be understated. But in the Court Administrator's view these injuries were not caused by the actions of Mountaire. This finding, came only after L.H. had a full and fair opportunity to present her case. On this record, Plaintiff is collaterally estopped from relitigating the causation issue. Since it has been determined that the causation issue is averse to L.H., and the causation issue is a necessary element of the legal malpractice claim against his attorneys, Defendants' Motion to Dismiss count I, which is based on proof a legal malpractice claim, is **GRANTED**.

Plaintiffs have asserted four additional counts based on: (1) reckless conduct; (2) promissory estoppel; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing. Each of these causes of action requires as an element of damage that the Plaintiff prove that the proximate cause of her injuries are as a result of the actions of Mountaire. As set forth herein, this issue has been determined by the Claims Administrator and the decision is that there is no relationship between the injuries and Mountaire's actions. As with the legal malpractice claim, the decision of the Claims Administrator acts as collateral estoppel. Since all of Plaintiff's claims depend on proof that the Plaintiff's injuries

are related to Mountaire's actions, a determination has been made that there is no relationship between the two, and that determination is binding on the Plaintiffs in this action, Defendants are entitled to a complete dismissal of this action.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*

Francis J. Jones, Jr., Judge

*File & ServeXpress*